411 F.2d 584
 Lucrecia Sosa MACHADO, widow of Domingo Ferman (or Fernan) Machado, Individually, and/on behalf of German Batres Machado, etc., Plaintiff-Appellee,
v.
STATES MARINE-ISTHMIAN AGENCY, INC., et al., Defendants-Appellants,
v.
T. SMITH & SON, INC., et al., Third-Party Defendant-Appellee.
 No. 26701.
 United States Court of Appeals Fifth Circuit.
 May 7, 1969.
 
 A. R. Christovich, Jr., New Orleans, La., Christovich & Kearney, New Orleans, La., for States-Marine Isthmian Agency, Inc., Isthmian Lines, Inc., States-Marine Lines, Inc., and Liberty Mut. Ins. Co.
 Donald N. Memmer, Russell J. Schonekas, Virgil M. Wheeler, Jr., New Orleans, La., Sehrt, Boyle & Wheeler, New Orleans, La., for T. Smith & Son, Inc.
 Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of the Court of Claims*.
 COLEMAN, Circuit Judge:
 
 
 1
 Upon a jury verdict in the District Court the widow and surviving son of Domingo Ferman Machado recovered judgment against defendants-appellants for his wrongful death. The judgment is affirmed.
 
 
 2
 On February 15-16, 1966, a cargo of baled burlap was unloaded from the S. S. Steel Navigator and placed in a warehouse at the Napoleon Avenue wharf in New Orleans. The bales weighed about 1500 pounds each and were unloaded by T. Smith as contract stevedore for States-Marine. T. Smith stacked the burlap in the warehouses but the work was done at the direction of and under the supervision of States-Marine.
 
 
 3
 The bales remained so stacked until about eleven o'clock on the morning of February 21, 1966, when decedent sustained his fatal injuries. Machado was a painter, an employee of the Board of Commissioners of the Port of New Orleans, generally known as the Dock Board. On the fatal morning he was a member of Gang 57, assigned to paint the outside of the sheet-metal wall of the warehouse. While the gang was engaged in the erection of a steel scaffold preparatory to this purpose, some of the heavy bales on the inside of the building fell against the wall. At least one of them penetrated the wall and knocked the scaffold down, with the result that decedent sustained a fractured skull and other injuries from which death quickly ensued.
 
 
 4
 States-Marine brought T. Smith & Son in as a third party defendant for indemnity or contribution.
 
 
 5
 In response to special interrogatories the jury found that States-Marine was negligent and that this negligence was the proximate cause of Machado's death. It also found that T. Smith was negligent but that this negligence was not a proximate cause of the fatal injuries.
 
 
 6
 On this appeal States-Marine does not contest its liability but seeks reversal for two reasons: (1) There was no evidence upon which the jury could find on the one hand that T. Smith was negligent and at the same time find such negligence not to have been a proximate cause of the accident, and (2) the award to the surviving son was grossly excessive and contrary to law.
 
 
 7
 On the first point, defendants-appellants launch an attractive but nevertheless an unavailing argument. T. Smith stacked the bales so if it was negligent then how could that have failed to be a proximate cause of the fall? No witness inside the buiding saw the fall or saw what caused it. The plaintiff, of course, took a res ipsa approach. The jury, therefore, was left to deduce or infer the ultimate answers. Under the circumstances it would have not been unreasonable to conclude that since the cargo was in the stack for five days before the collapse, all that time in sole charge of States-Marine, any initial negligence of T. Smith was too remote to have contributed to the occurrence. Or, by the same token, when the bales remained safely in place for so long an additional act of those in control had to intervene to have started the cascade. The jury may well have believed that any negligence on the part of T. Smith was wholly superseded by negligence of States-Marine in failing to discover or to correct improperly stacked bales.
 
 
 8
 If there is any view of the evidence which makes a jury answer to special interrogatories consistent, they must be resolved that way. To search for one possible view which would make a jury finding inconsistent is to collide with the Seventh Amendment. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). Applying this standard we detect no fatal inconsistency in the jury findings.
 
 
 9
 Judged by the experience of similar cases, the award in favor of the minor son would appear to be higher than that normally to be expected. Defendants-appellants, therefore, have had the benefit of an acutely attentive ear on this point. It is not unlikely that had the judges been exercising the function of jurors the award, if made, might have been for considerably less. That, however, is not the test in the exercise of our appellate function. We can intervene only if the verdict is excessive as a matter of law and not merely as a matter of fact. The verdict must be so gross or inordinately large as to be contrary to right reason, Hare v. Firmin, 5 Cir. decided April 21, 1969, 410 F.2d 230; Complete Auto Transit v. Floyd, 5 Cir., 1967, 249 F.2d 396, 399; Travelers Insurance Company v. Gulf National Bank, 5 Cir., 1962, 307 F.2d 295.
 
 
 10
 In denying the motion for a new trial, the District Court pointed out that this minor suffered extraordinary damages in the loss of his father in that he has no other parent or relative in this Country from whom he can derive any comfort, support, love, affection or guidance, and is left dependent entirely upon the good offices of others. In view of these considerations we are not able to say with confidence that there was an abuse of discretion in the denial of a new trial. The verdict must stand as rendered.
 
 
 11
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation as a member of this panel