Willace **BRIDGES** and wife, Ruby Bridges, Plaintiffs-Appellees,

v.

**GROENDYKE TRANSPORT, INC.** and Frank Gorsuch, Defendants-Appellants.

No. 75–2565.

United States Court of Appeals, Fifth Circuit.

May 27, 1977.

Hugh R. Kelly, Houston, Tex., for defendants-appellants.

Robert H. Roch, Craig Lewis, Houston, Tex., for plaintiffs-appellees.

Before WISDOM, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

This appeal arises out of an automobile-truck collision wherein the plaintiffs-appellees, Willace and Ruby Bridges, sustained personal injuries. The defendants-appellants are Frank Gorsuch, the driver of the truck, and Groendyke Transport, Inc., employer of Gorsuch and the owner of the truck. The trial court, after hearing all the evidence, directed a verdict holding the defendants liable to the Bridges as a matter of law. Based upon the jury verdict in answer to the damage issues, the trial court entered a judgment in favor of Ruby Bridges in the amount of $36,290.50, and a judgment in favor of Willace Bridges in the amount of $56,165.00. On appeal, the defendants are alleging that the trial judge erred in directing a verdict as to liability, and that the award to plaintiff Willace Bridges was excessive, and, therefore, the trial judge abused his discretion in denying the defendants' motion for a new trial. We disagree and affirm.

I

■ The first issue raised by the defendants on appeal is whether the trial court erred in directing a verdict on liability against the defendant. In determining whether a verdict should have been directed, the appellate court applies the same standard as did the trial court in passing on the motion originally. Whether a verdict should be directed is a question of law, *United States v. Bucon Construction Company*, 430 F.2d 420 (5th Cir. 1970), and, therefore, litigants are entitled to a full review by the appellate court without special deference to the views of the trial court. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2536.

In *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969), this court set forth the standards to be followed in deciding motions for directed verdicts. We explained that the trial judge should consider all the evidence—not just that evidence which supports the non-mover's case. This evidence, however, should be considered in the light most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that *reasonable men could not arrive at a contrary verdict*, granting of the motion is proper. A mere scintilla of evidence is insufficient to present a question for the jury. The motion for directed verdict should not be decided by which side has the better of the case, nor should it be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

■ The key question in applying the reasonable man standard for determining whether there is an issue for the jury is the freedom that the jury will be permitted in drawing inferences from the evidence. There would be little problem in determining the sufficiency of the evidence to make a jury issue if there were any sure way to distinguish between the legitimate inference, to which the party is entitled, and the unreasonable inference, to which he is not. It is suggested that the range of reasonable inference is dependent upon the unique circumstance of each particular case. No self applying rule can be offered for determining what inferences are reasonable. It is

uncontested, however, that an inference would be unreasonable if it would allow a jury to rest its verdict on mere speculation and conjecture.

■ In the present case, any inference that a jury might have made which would have freed the defendants from negligence would have been unreasonable. The defendant Gorsuch's own testimony established negligence, and the trial judge did not err in so finding.

Mr. Gorsuch testified that at the time of the accident he was driving a fourteen thousand pound tractor which was pulling a thirteen thousand five hundred pound petroleum tank trailer. He testified that he had been driving for some nineteen miles in what he termed as "patchy" fog before he reached the intersection of US 259 and 224. The defendant stated that at the intersection the fog became very heavy [App 69] and that it was "just like running onto a blank wall." [App 71]. He further stated that because of the fog he was unable to see a man in the roadway approximately one-half mile from the intersection until the man was only twenty feet in front of his truck. [App 71]. The man who was in the roadway was attempting to flag down traffic because of an accident further up the highway. In order to avoid hitting this man, Gorsuch swerved his truck to the left, applied full and continuous braking power, laid down skid marks for sixty-five feet, hit the guard rail on the left hand side of the road, ricocheted off the guard rail and went another one hundred feet before striking the plaintiff's car and the car parked behind it. After hitting these cars, the truck then struck the guard rail on the right hand side of the road and came to a stop.

Despite the weather conditions, the defendant admitted that he had been continually accelerating his truck from the intersection of US 259 and 224 until the location of the accident—a distance of at least a half mile. Mr. Gorsuch testified that he was in fifth gear at the point of the accident, traveling approximately thirty miles per hour, and that he had not attempted to slow down until he saw the flagman. At the speed he was traveling, Mr. Gorsuch did not have time to bring his truck to a safe stop and still avoid hitting the flagman. The police officer who investigated the accident testified at trial that because of the poor visibility any speed over fifteen to twenty miles per hour would be overdriving one's visability under the conditions existing at the scene of the accident. [App 8]. The officer's testimony is not inconsistent with the defendant's own description of the weather conditions and the fact that the flagman did not become visible until he was only twenty feet away from the truck. It is inconceivable that Mr. Gorsuch could possibly bring his twenty-seven thousand pound vehicle traveling at a speed of thirty miles per hour to a stop in this short of a distance.

Applying the standards we have previously set forth, we feel that a reasonable man could not find the defendant to be free of negligence. We hold, therefore, that the trial court did not err in directing a verdict on liability against the defendants.

II

■ The second error raised by the defendants is whether the trial judge abused his discretion in denying the defendants' motion for a new trial based on the grounds that the damage award to the plaintiff Willace Bridges was excessive. We hold that the trial judge did not abuse his discretion.

This Court has reviewed verdicts challenged as excessive for many years. While the Supreme Court has not spoken conclusively on the propriety of this review, that Court has turned down several opportunities to determine whether the Seventh Amendment right to trial by jury bars appellate review of the size of a verdict. *See Neese v. Southern Ry. Co.*, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955); *Grunenthal v. Long Island Railroad Co.*, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). The Supreme Court, therefore, has not given its approval to any particular standard of review to be applied by this Court. Although some cases state that the test to be applied

on review is merely "abuse of discretion", most cases add limiting adjectives to indicate that appellate courts should be very reluctant to reverse on this ground, and should do so only on the strongest of showings.[1] This Court has said that reversal should occur only for "grave abuse of discretion", or only if the verdict is "so gross or inordinately large as to be contrary to right reason," or only if there has been a "clear abuse of discretion with respect to assessment of damages." *See Rosiello v. Sellman*, 354 F.2d 219 (5th Cir. 1965); *Machado v. States Marine-Isthmian Agency*, 411 F.2d 584 (5th Cir. 1969); *Ward v. Buehler*, 472 F.2d 1170 (5th Cir. 1973).

The rationale behind employing such a strict test on review is fairly simple. The size of the award a claimant is entitled to is generally a question of fact. A panel of impartial jurors that had an opportunity to hear all the evidence and observe all the witnesses first decided that question. The trial judge, with a similar opportunity to hear and observe, then concurred with the propriety of the panel decision when he or she denied the defendants' motion for a new trial. A reviewing court should be exceedingly hesitant in overturning the decision of the jury and the trial judge. The appellate court's decision must necessarily be made without the opportunity to observe the claimant and the various other witnesses. Also, the factors which must be considered in determining the amount of money a claimant is entitled to are not readily translated into dollar amounts. In most cases, there is no reason to assume that a three judge appellate court is better equipped to make this translation than a panel of jurors or the trial judge. In fact, the opposite assumption is probably more appropriate. It is therefore, only on a very rare occasion that a jury verdict, approved by a trial judge, should be overturned. This is the case whether we use "abuse of discretion", "clear abuse of discretion," "shocking to the conscience," or "monstrous," as the test to be applied on review.

It is only when the award received by the claimant clearly exceeds that amount that *any* reasonable man could feel the claimant is entitled to that the case should be reversed, and it is within this very limited scope of review that we now examine the amount of money awarded to plaintiff for his injuries.

The jury returned a judgment in favor of Mr. Bridges in the amount of $56,165.00. The jury in assessing damages was instructed to consider such physical pain and mental anguish that Mr. Bridges sustained from the date of the accident to the date of the trial and whatever pain and anguish he would in reasonable probability sustain in the future beyond the date of trial. The jury was also instructed to consider whatever loss of earnings Mr. Bridges had sustained up to the date of trial and whatever loss of earnings he would in reasonable probability sustain in the future.

The plaintiff testified at trial that he was suffering pain as a result of the accident in his left leg and in his neck. The evidence established that as a result of the accident on October 30, 1971 he developed thrombophlebitis in his leg. Thrombophlebitis involves the swelling and discoloration of the leg, and, according to the plaintiff, "severe" pain. While the treating physician testified that no evidence of thrombophlebitis appeared subsequent to April 12, 1972, the plaintiff testified that he had pain in the leg as recently as November of 1974, and that up until the time of trial he would suffer pain if he remained standing for any period of time.

The plaintiff also testified that up until the time of trial (January 23, 1975), he had been suffering severe pain in the left side of his neck which extended down his left arm. He claimed that as a result of this pain he has been continually on medication, has received two cortisone shots, and has suffered through long periods of sleeplessness. Mr. Bridges testified that his sex life has been adversely affected and that he is

---

1. Common phrases used in the different circuits to limit review are: "grossly excessive"; "inordinate"; "shocking to the judicial conscience"; "outrageously excessive"; "monstrous". See 11 Wright & Miller, Federal Practice and Procedure: Civil § 2820.

no longer able to participate in his favorite hobbies—fishing and gardening—to the extent he was able to before the accident.

The plaintiff offered further testimony to the effect that his work efficiency has decreased by as much as 30 to 40% and that this was the reason that his unit sales had decreased since the accident. The plaintiff testified that had his unit sales remained the same since the accident he would have earned approximately $20,000 in 1974 instead of $15,858.00.

In response to the plaintiff's evidence as to his physical and economic injuries, the defendants offered a substantial amount of evidence discounting the seriousness of the injuries and providing alternative explanations. In light of the defendants' evidence, we are surprised at the size of the verdict the jury returned.[2] However, we do not feel that the trial judge clearly abused his discretion by denying the motion for a new trial on this point. Fully aware of our limited scope of review, we feel that the size of the award is not so shocking or monstrous as to require a reversal. We feel that in the circumstances of this case it is impossible to say that a reasonable man could not reach the same result. Consequently, we affirm.

GEE, Circuit Judge, concurring:

I write briefly to express my especially thorough concurrence in note 2, 553 F.2d at 881. But we did not see Willace Bridges or hear his testimony, upon which—almost alone, and in substantial defiance of much evidence—his damage award is based. And we do not sit to do justice, but justice according to law. I am satisfied, insofar as I can be at the stage where we enter the case, that the latter has been done, though I have grave doubts about the former.

2. We are satisfied such would not have been the award of this court—but that is not the test.