James C. TREZEVANT,
Plaintiff-Appellant,

v.

CITY OF TAMPA, a municipal corporation, et al., Defendants-Appellees.

James C. TREZEVANT,
Plaintiff-Appellee,

v.

CITY OF TAMPA, a municipal corporation, Hillsborough County Board of Criminal Justice, et al., Defendants-Appellants.

Nos. 83–3370, 83–3038.

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 11, 1984.

---

Robert V. Williams, Tampa, Fla., for James C. Trezevant.

Chris W. Altenbernd, Tampa, Fla., for defendants-appellees in No. 83–3370.

Bernard C. Silver, Asst. City Atty., Tampa, Fla., City of Tampa.

Donald G. Greiwe, Chris W. Altenbernd, Tampa, Fla., for Hillsborough County Bd. of Criminal Justice.

Before FAY, VANCE and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

In Florida a motorist who receives a traffic citation may sign a promise to appear or post a bond pending court disposition. Mr. Trezevant elected to post a bond, had the necessary cash with him to do so, but found himself in a holding cell behind bars. Feeling that such a procedure deprived him of his civil rights (to remain at liberty), he brought this action. The jury agreed with his contentions and we affirm.

This matter was tried before the Honorable William J. Castagna, United States District Court, Middle District of Florida, beginning on October 20, 1983. The amended complaint then before the trial court contained four counts. Count I charged that the City of Tampa and Officer Eicholz deprived Mr. Trezevant of his civil rights by improperly arresting him. Count II similarly charged the Hillsborough County Board of Criminal Justice ("HBCJ") and Deputy Edwards with improperly incarcerating Mr. Trezevant. Counts III and IV were included as pendent common law and state law claims against the same defendants. Count III was voluntarily dismissed by the plaintiff and Count IV was disposed of on a motion for directed verdict against the plaintiff.[1] The jury returned a verdict of $25,000 in favor of the plaintiff and against the HCBJ and the City of Tampa. The individual defendants were absolved of all liability.

The case is now before this court on cross appeals pursuant to 28 U.S.C. § 1291. Mr. Trezevant has appealed the amount of attorney's fees awarded to him and the City of Tampa and the HBCJ have appealed the judgment against them. The parties have raised multiple issues on appeal but we find that a determination of three is dispositive of the entire matter. These three issues are whether the evidence supports the verdict rendered by the jury; whether the amount of the verdict rendered is excessive; and whether the trial court erred in the amount of attorney's fees awarded pursuant to 42 U.S.C. § 1988.

## FACTS

On the morning of April 23, 1979, the plaintiff, James C. Trezevant, was en route from his home in northwest Hillsborough County to his office in central Tampa. When he reached the intersection of Habana Avenue and Columbus Drive he stopped for a red light, he was third in line at the intersection. When the light changed, Mr. Trezevant and the two cars in front of him proceeded through the intersection. Just south of the intersection the other two cars came to a sudden stop and turned into a parking lot. In order to avoid a collision, Mr. Trezevant came to a screeching halt. Having avoided an accident, he then proceeded on. Six or seven blocks later, Mr. Trezevant was stopped by Officer Eicholz of the Tampa police department and was issued a citation for reckless driving.[2] Officer Eicholz explained to Mr. Trezevant that if Trezevant did not sign the citation he would have to post a bond. Mr. Trezevant elected to go to central booking and post a bond.

Central booking has two entrances. In 1979, one of the entrances was used by bail bondsmen and lawyers to post bail bonds. Through a series of halls, this entrance leads to a glass window adjacent to the central booking desk. The only other entrance was used by policemen who were taking arrestees to be booked. This second entrance opened into a large room adjacent to the booking desk. Officer Eicholz escorted Mr. Trezevant to central booking and when they arrived he frisked Mr. Trezevant and took him through the door nor-

---

1. This ruling has not been appealed.

2. Officer Eicholz issued a total of three citations: (1) reckless driving, (2) failure to produce a motor vehicle registration certificate, and (3) refusal to sign a traffic citation. The parties agreed that the third citation was a nullity there being no such offense.

mally used by policemen with arrestees in custody. Officer Eicholz walked up to the central booking desk and presented the jailer on duty with Mr. Trezevant and with the citations that Mr. Trezevant had refused to sign. The jailer took Mr. Trezevant's valuables and his belt and shoes and placed Mr. Trezevant in a holding cell until he could be processed. Mr. Trezevant was in the holding cell for a total of twenty-three minutes.

Mr. Trezevant always had enough cash to bond himself out. No one ever told Mr. Trezevant what he was being incarcerated for; he was not allowed to call an attorney before he was incarcerated; and, he was incarcerated with other persons who were under arrest for criminal violations. Further, while he was being held in the holding cell, Mr. Trezevant suffered severe back pain and his cries for medical assistance were completely ignored.

Mr. Trezevant's complaint centers around the fact that he was incarcerated for a civil infraction. It is true that because Mr. Trezevant could not produce his vehicle registration he could have been arrested. However, it is also true that no one ever thought that Mr. Trezevant was not the owner of the car he was driving. The only reason that he was escorted to central booking was that he had elected to post a bond for the civil infraction of reckless driving. Officer Eicholz consistently maintained that he did not arrest Mr. Trezevant.

## SUFFICIENCY OF THE EVIDENCE

The City of Tampa and the HBCJ contend that the trial court erred in failing to grant a directed verdict in their favor. A directed verdict decides contested substantive issues as a matter of law, thus we apply the same standard as was applied by the district court:

> Courts view all the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the non-moving party....

"... [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury."

*Neff v. Kehoe,* 708 F.2d 639 (11th Cir.1983) (*quoting Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969)).

Applying this standard to the case at bar, the City of Tampa and HBCJ would have us find that there was no evidence of a policy that caused the deprivation of the plaintiff's rights. They would each have us look at their actions in this matter individually. The City of Tampa contends that Officer Eicholz properly escorted Mr. Trezevant to central booking and turned him over to HBCJ for processing. The City argues that once Officer Eicholz reached the booking desk and handed the citations to the deputy on duty, the City was absolved of all further responsibility. Even though Officer Eicholz was present and observed that Mr. Trezevant was being incarcerated, the City believes that Officer Eicholz had no responsibility to object to the incarceration.

The HBCJ, on the other hand, argues that it did nothing wrong because all that its personnel did was accept a prisoner from Officer Eicholz on citations that were marked for arrest.[3] The HBCJ would have us hold that their deputy did not do anything wrong because he believed in good faith that Mr. Trezevant was under arrest and that the deputy had no obligation to make any inquiry of Officer Eicholz concerning Mr. Trezevant's status. We cannot agree with either the city or the HBCJ.

The United States Court of Appeals for the Fifth Circuit has recently dealt with a similar legal issue. In *Garris v. Rowland,* 678 F.2d 1264 (5th Cir.1982), a warrant was issued and Mr. Garris was arrested even though a follow-up investigation prior to

---

**3.** Some confusion surrounds the three citations. The jury could have concluded that Officer Eicholz had not completed the citations until after Mr. Trezevant was placed in the holding cell. The check showing that Mr. Trezevant had been arrested was apparently a mistake.

Mr. Garris' arrest had revealed that the charges against Mr. Garris were without substance. The Court found that while the City of Fort Worth Police Department had a policy that required follow-up investigations by a second police officer, there was no policy to coordinate the follow-up investigations with the original investigation so as to prevent the arrest of innocent people:

> There was no policy or method providing for cross-referencing of information within the department to prevent 'unfounded' arrests such as occurred here, nor was there a policy providing for the follow-up investigator ... to check with the original investigator ..., who in this case was aware of Rowland's intention to arrest Garris and could have prevented such action. In summary, the record establishes that during this entire police operation, leading up to Garris' unlawful arrest, numerous mistakes occurred, all of which resulted from various officers carrying out the policies and procedures of the Fort Worth Police Department.

*Garris*, 678 F.2d at 1275. We find this reasoning to be persuasive.

■ In the case at bar, Mr. Trezevant's incarceration was the result of numerous mistakes which were caused by the policemen and deputies carrying out the policies and procedures of the City of Tampa and the HBCJ. There was certainly sufficient evidence for the jury to find, as it did, that pursuant to official policy Officer Eicholz escorted Mr. Trezevant to central booking where he was to be incarcerated until the HBCJ personnel could process the paper work for his bond. We cannot view the actions of Officer Eicholz and the jailer in a vacuum. Each was a participant in a series of events that was to implement the official joint policy of the City of Tampa and the HBCJ.[4] The failure of the procedure to adequately protect the constitutional rights of Mr. Trezevant was the direct result of the inadequacies of the policy established by these defendants. The trial court correctly denied the motions for directed verdict and submitted the case to the jury.

■ In *Gilmere v. City of Atlanta*, 737 F.2d 894 (11th Cir.1984), this court explained that a municipality may be liable under 42 U.S.C. § 1983 (1982) if unconstitutional action is taken to implement or execute a policy statement, ordinance, regulation or officially adopted and promulgated decision. *Gilmere* at 901. Liability may also attach where the unconstitutional deprivation is "visited pursuant to government 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Gilmere* at 901 (quoting *Monell v. Department of Social Services*, 436 U.S. 658, at 690–91, 98 S.Ct. 2018 at 2035–36, 56 L.Ed.2d 611, *rev'g in part Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). However, the "official policy or custom must be the moving force of the constitutional violation" before civil liability will attach under § 1983. *Gilmere*, 737 F.2d at 901 (*quoting Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)).

■ In *Gilmere*, the plaintiff based her claim on the theory that the constitutional deprivation was the result of official custom; she made no claim that it was the result of official policy. However, our court found that the evidence conclusively showed that the municipal defendant had no official custom that caused the alleged constitutional deprivation. In the case at bar, however, there was sufficient evidence for the jury to find that Mr. Trezevant's unconstitutional incarceration was the result of an official policy. Officer Eicholz escorted Mr. Trezevant to central booking and the HBCJ deputies then processed Mr. Trezevant in the normal course of business and in accordance with what they considered to be governmental policy. The fact that no motorist prior to Mr. Trezevant had elected to not sign a citation but rather post a bond is hardly justification for having no procedure. The record is devoid of any explanation as to why Mr. Trezevant was not allowed to use the entrance and

---

4. The City of Tampa was one member of the group that supervised the HBCJ.

window routinely used by attorneys and bondsmen. The imposition of liability on these municipal defendants is in full compliance with the standards explained in *Gilmere*.

## THE AMOUNT OF THE AWARD

The defendants have also challenged the amount of the award and contend that the amount is excessive. The standard for review of this issue was stated in *Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir. Unit B 1981):[5]

> In order for an award to be reduced, 'the verdict must be so gross or inordinately large as to be contrary to right reason.' *Machado v. States Marine-Isthmian Agency, Inc.*, 411 F.2d 584, 586 (5th Cir. 1969). The Court 'will not disturb an award unless there is a clear showing that the verdict is excessive as a matter of law.' *Anderson v. Eagle Motor Lines, Inc.*, 423 F.2d 81, 85 (5th Cir. 1970). The award, in order to be overturned must be 'grossly excessive' or 'shocking to the conscience.' *La-Forest v. Autoridad de las Fuentas Fluviales*, 536 F.2d 443 (1st Cir.1976).

■ There was evidence of Mr. Trezevant's back pain and the jailer's refusal to provide medical treatment and Mr. Trezevant is certainly entitled to compensation for the incarceration itself and for the mental anguish that he has suffered from the entire episode. This award does not "shock the court's conscience" nor is it "grossly excessive" or "contrary to right reason." Finally, there is no indication that the jury considered this amount to be punitive as opposed to compensatory.

## ATTORNEY'S FEES

■ Mr. Trezevant has challenged the trial court's determination to sever the time spent on the unsuccessful counts from the fee award and its determination not to enhance the fee award. In the order on fees,

the trial court expressly considered the various factors delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and also found that the pendent claims had been "clearly without merit".

The United States Supreme Court has recently interpreted 42 U.S.C. § 1988. It held:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983).

The trial court correctly recognized that the fee award should exclude the time spent on unsuccessful claims except to the extent that such time overlapped with related successful claims. The court then excluded the time spent on the unsuccessful claims because those claims were clearly without merit. Finally, the court considered the award in light of the work performed in this case and found that the award was a reasonable fee for the services performed. We find that the trial judge correctly applied the law and did not abuse his discretion.

## CONCLUSION

For the reasons stated, we find that the jury verdict was supported by sufficient

---

5. Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding as precedent in the Eleventh Circuit.

*Bonner v. City of Prichard*, Ala., 661 F.2d 1206 (11th Cir.1981). *Del Casal* was decided on January 16, 1981, and, so, is binding precedent in the Eleventh Circuit.

**342**

evidence; the verdict was not excessive; and, the trial court did not abuse its discretion in setting the attorney fee award. Accordingly, the judgment of the district court is AFFIRMED.