ENTERPRISE REFINING COMPANY,
Plaintiff-Appellee,

v.

SECTOR REFINING, INC.,
Defendant-Appellant.

No. 83–2315.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1986.

Marynell Maloney, San Antonio, Tex., for defendant-appellant.

Green, Downey, Patterson & Schultz, Glenn W. Patterson, Jr., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and JOHNSON and WILLIAMS, Circuit Judges.

## OPINION

JOHNSON, Circuit Judge:

Sector Refining, Inc. appeals from the judgment of the district court entered in favor of Enterprise Refining Company in accordance with the jury's verdict. The only issue presented for this Court's review is whether the damage award is against the great weight of the evidence or whether the award is excessive. This Court finds that there is simply no record support for the full amount of damages awarded. Consequently, this Court orders that this case be remanded for a new trial on the issue of damages unless Enterprise Refining Company accepts a remittitur of the judgment

to the amount established in the record, $422,220.00.

## I.  BACKGROUND [1]

Enterprise Refining Company (Enterprise) sued Sector Refining, Inc. (Sector) in Texas state court to recover damages for Sector's alleged failure to process crude oil belonging to Enterprise into refined petroleum products according to a contract between Enterprise and Sector.  As an affirmative defense, Sector asserted that the contract violated certain regulations of the Department of Energy (DOE).  Sector brought a third-party claim against Enterprise Products Company, Enterprise's corporate parent, alleging that the parent company violated the DOE regulations. The parent company removed the action to federal district court.[2]

Following a jury trial, the district court entered judgment in favor of Enterprise and against Sector in accordance with the jury's verdict.  The district court then denied Sector's motions for judgment not withstanding the verdict, new trial, and remittitur.  Sector appealed to this Court, asserting that it was entitled to judgment as a matter of law because the contract violated DOE regulations.  Alternately, Sector contended that the jury's verdict was against the great weight of the evidence.  Sector also claimed that the damage award was not supported by the evidence and that it was excessive.  This Court found that "the controlling issues involve interpretation and application of the Emergency Petroleum Allocation Act." Consequently, this Court transferred the case to the Temporary Emergency Court of Appeals pursuant to 28 U.S.C. § 1631.[3]

The Temporary Emergency Court of Appeals held:

**1.**  This Court's rendition of the background in this case comes largely from the opinion by the Temporary Emergency Court of Appeals.  *See Sector Refining, Inc. v. Enterprise Refining Co., 771 F.2d 496 (Em.App.1985).*

**2.**  Sector later dismissed its claims against the parent company prior to trial.

**3.**  Section 1631 provides:

Because we find that Sector failed to move for a directed verdict at the close of the evidence, we are unable to review Sector's claim that it is entitled to judgment as a matter of law on its affirmative defense.  For the same reason, we are unable to consider Sector's contention that there is insufficient evidence to support the jury's verdict that the contract did not violate the DOE's regulations.  We therefore affirm that portion of the district court's judgment.  *Sector also claims that there was insufficient evidence to support the jury's damage award and that the damage award is excessive.  We find that these claims do not arise under the Emergency Petroleum Allocation Act.  Consequently, we lack jurisdiction over them and transfer that portion of this appeal to the Fifth Circuit Court of Appeals.*

771 F.2d at 499 (emphasis added) (transfer pursuant to 28 U.S.C. § 1631).

Thus, this case has now been transferred back to this Court for resolution of the damage issue presented in this appeal. The specific facts pertaining to this issue will be discussed in the body of this Court's opinion.  This Court concludes that the jury awarded more than the maximum amount established in the record which the jury properly could have awarded under this Circuit's maximum recovery rule. Consequently, this Court remands this case to the district court with orders to conduct a new trial on the issue of damages only, unless Enterprise accepts a remittitur of the judgment to the amount of $422,220.00.

## II.  DISCUSSION

In this case, the jury found that Sector breached its contract with Enterprise.  The jury awarded Enterprise $731,600.00 in

[Where a] court [as defined in 28 U.S.C. § 610] finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred....

**1118**

damages. On appeal, Sector contends that the maximum amount that the jury properly could have awarded is $422,220.00. Sector argues that the district court erroneously denied its motion for new trial on the ground that the verdict was not supported by the evidence, and alternately, that the district court erred in refusing to grant a new trial or remittitur on the ground that the award was excessive. This Court agrees that the district court either should have granted remittitur or ordered a new trial on damages. We now do so.

█ As a general rule, a jury's assessment of damages is entitled to considerable deference by this Court. This Court will disturb the jury's finding only in those instances where the award " 'clearly exceeds that amount [to which] any reasonable man could feel the claimant is entitled.' " *Haley v. Pan American World Airways*, 746 F.2d 311, 317 (5th Cir.1984) (quoting *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 880 (5th Cir.1977)). The fact that the district court has reviewed and approved the award makes this Court even more hesitant to overturn the award. *Id.* *See also Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir.1982).

Nevertheless, "[a] damages award cannot stand when the only evidence to support it is speculative or purely conjectural." *Haley*, 746 F.2d at 316; *In re Dearborn Marine Services, Inc.*, 499 F.2d 263, 288 (5th Cir.1974), *cert. dismissed*, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975). This Court does not "reverse a jury verdict for excessiveness except on the strongest of showings, but when a jury's award exceeds the bounds of reasonable recovery, we must suggest a remittitur ourselves or direct the district court to do so." *Dixon v. International Harvester Co.*, 754 F.2d 573, 590 (5th Cir.1985); *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983).

█ This Court's power to grant a remittitur is the same as that of the district court. The amount of the remittitur is determined according to this Circuit's "maximum recovery rule," which provides that the verdict will be reduced to the maximum amount the jury properly could have awarded. *Dixon*, 754 F.2d at 590; *Caldarera*, 705 F.2d at 784. Whether this Court views this case as one in which the evidence wholly fails to support the verdict or as a situation in which the jury awarded more than it properly could have awarded, the result is the same.

█ This case involves a situation where the evidence completely fails to support a verdict in excess of $422,220.00. Enterprise's own expert witness testified clearly and unequivocally that Enterprise's damages were $422,220.00. His testimony further indicated, if fairly read, that Enterprise was *not seeking* recovery of the $731,600.00 figure; rather, it was seeking no amount greater than $422,220.00. Enterprise's expert witness testified on direct examination:

> [By Counsel for Enterprise]: I would like to show you the next exhibit which is noted as Plaintiff's Exhibit 12, Calculation of E.R.C. [Enterprise Refining Company] Damages. Can you go through the calculations on that chart for us, please?
> A: Okay. This is, in essence, a summary of all the previous numbers we have been talking about.
> Q: First of all, what is your conclusion as to the amount of damages that Enterprise Refining Company has sustained?
> A: *The bottom figure, $422,220.*

Record Vol. 4 at 183–84 (emphasis added). After discussing the figures contained on each line of Exhibit 12 (attached, Appendix 1), Enterprise's expert concluded: "And you add up all those figures and *it comes up simply to $422,000.*" Record Vol. 4 at 185 (emphasis added).

Exhibit 12, *see* Appendix 1, also contains the only documentary reference to the $731,600.00 figure awarded by the jury. The column under which that figure appears is labeled "Stripper Crude."[4] Plain-

---

4. "Stripper Crude" was defined by Enterprise's expert witness as follows:

tiff's expert explained that column, on cross examination, as follows:

> [By Counsel for Sector]: How does that tab [the stripper crude column]—how does it relate to damages in this case?
>
> A: Well, this was developed to show *what would have happened, what would have been the damages had the crude oil been certified to Sector as stripper oil.* If that would have been the case, since stripper oil was uncontrolled, Sector nor Enterprise Refining would be liable for the cost of running that stripper oil. They would not have to buy an entitlement to put behind it and, therefore, the economics of the processing fuel would look even better.
>
> Q: And what is that figure?
>
> A: $731,000.

Record Vol. 4 at 195–96 (emphasis added).[5]

The fact that Enterprise was not seeking the $731,600.00 figure as damages is corroborated by the testimony of Enterprise's corporate counsel:

> [By Counsel for Enterprise]: In regard to the calculations of damages, the recertification of oil by Enterprise to Sector, did that decrease or increase the damages that Enterprise would be entitled to?
>
> A: Well, it greatly decreased our damages. *If* the crude oil *had been* stripper crude oil, our damages *would have been* $731,600.
>
> As upper tier crude oil, our damages *were* $422,220.

Record Vol. 5 at 16–17 (emphasis added).

Enterprise contends that the jury reasonably could have concluded that Enterprise certified the oil to Sector as "stripper crude." Alternately, Enterprise contends that the jury could have concluded that Enterprise should not bear the cost of the upper tier entitlement. The evidence allows only one conclusion on each of these issues, however.

First, it is uncontradicted that the oil was recertified from stripper crude to upper tier crude sometime prior to trial. At no time *during trial* was there any evidence that Enterprise was challenging the validity of that recertification. Moreover, at no time did Enterprise seek damages for stripper crude. This Court's review of the record discloses only that the oil was considered to be upper tier crude oil by both Sector and Enterprise and that damages for only that classification were sought. *See* Record Vol. 5 at 13–16; Record Vol. 4 at 181–85.

In addition, the testimony was uncontradicted that the contract between Sector and Enterprise provided that Enterprise was to bear the cost of the upper tier entitlement. *See, e.g.,* Record Vol. 4 at 182. Thus, if the jury did indeed conclude, as Enterprise contends, that Enterprise should not have been responsible for the entitlement, such a conclusion was completely unsupported by the record.

Any remaining doubts about this resolution of the instant case are completely dispelled by Enterprise's motion for a directed verdict:

> Comes now Enterprise Products or Enterprise Refining Company, plaintiff in the suit, and moves the court to direct a

---

Stripper oil is oil produced from wells that produce less than 10 barrels a day of crude—10 barrels a day of crude oil. That oil is exempt and the reason is that these wells are very uneconomic or expensive to keep in operation. . . .

Record Vol. 4 at 169.

5. According to the testimony at trial, lower tier oil was oil produced prior to 1972. Record Vol. 4 at 168. Oil discovered after that date was classified as upper tier oil. Record Vol. 4 at 30. Different treatment was accorded to wells drilled after the regulations went into effect. Exhibit 12, *see* Appendix 1, lists certain "entitle-

ment effects" that a refinery either would receive or pay out depending on the type of oil refined. Enterprise's expert described these as follows:

> In the instant case we are talking about this refinery running upper tier crude, [it] would pay $9.98 for the right to run it [the "upper tier entitlement"]. [The refinery] got $3.77 credit just because [it] ran something [the run credit]. . . . The difference is $6.21 a barrel. [The refinery] had to pay $6.21 a barrel for the right to have run that old crude net.

Record Vol. 4 at 178.

verdict in favor of the plaintiff in this case on the following grounds: one, that the case has shown, and it is undisputed, that Enterprise Products delivered 31,000 barrels of oil under the processing agreement, that Sector defaulted under the agreement, that they failed to pay, that the failure to pay was the· [ ] proximate cause of damages to Enterprise Refining Company *in the amount of $422,220.* Record Vol. 5 at 138–39 (emphasis added).

It is readily apparent to this Court that the maximum that a jury possibly could have awarded in this case is $422,220.00. There is nothing to be balanced and nothing to be weighed; the record is wholly devoid of any support for any figure in excess of $422,220.00. Thus, this Court presents Enterprise with the usual choice in cases of this type. *See Dixon,* 754 F.2d at 590; *Higgins v. Smith International, Inc.,* 716 F.2d 278, 281 (5th Cir.1983). The case will be remanded to the district court with orders to hold a new trial solely on the issue of damages unless Enterprise agrees to accept a remittitur of the judgment of the district court to the amount of $422,-220.

## III.  CONCLUSION

For the reasons stated, this case is remanded to the district court for further proceedings in accordance with this opinion.

REMANDED.

## APPENDIX 1

PLAINTIFF
EXHIBIT #12
CASE – H80–994

## CALCULATION OF ERC DAMAGES

|  | BBLS | $/B | U.T. CRUDE | STRIPPER CRUDE |
|---|---|---|---|---|
| VALUE OF PRODUCTS NOT DELIVERED |  |  |  |  |
| NAPHTHA | 8,680 | 30.87 | 267,952 |  |
| NO. 2 HEATING OIL | 2,119 | 32.34 | 68,520 |  |
| NO. 5 HEAVY FUEL OIL | 13,020 | 24.99 | 325,370 |  |
| TOTAL VALUE |  |  | 661,850 |  |
| LESS PROCESSING FEE | 31,000 | 2.00 | (62,000) |  |
|  |  | SUB TOTAL | 599,850 | 599,850 |
| ENTITLEMENT EFFECTS |  |  |  |  |
| PLUS RUN CREDIT | 31,000 | 3.77 | 116,870 | 116,870 |
| LESS UPPER TIER ENTITLEMENT | 31,000 | 9.98 | (309,380) |  |
| PLUS SMALL REFINER BIAS | 31,000 | 0.48 | 14,880 | 14,880 |
| TOTAL DAMAGES |  |  | 422,220 | 731,600 |