# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30757
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2020

Lyle W. Cayce
Clerk

JANICE WILLIAMS,

      Plaintiff–Appellee,

v.

MMO BEHAVIORAL HEALTH SYSTEMS, L.L.C.,

      Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-11650

Before OWEN, Chief Judge, and SOUTHWICK and WILLETT, Circuit Judges.
PER CURIAM:*

      Janice Williams sued MMO Behavioral Health Systems, L.L.C. (MMO), her former employer, for defamation and other claims. After a jury trial, the district court awarded her $224,000. MMO now appeals the district court's judgment. We affirm.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30757

## I

Williams started work as a cook at a psychiatric hospital for MMO in 2001. While Williams worked for MMO, she was never formally disciplined. In fact, Williams's supervisor complimented her work. In 2015, Williams was diagnosed with bone spurs and plantar fasciitis. Following these diagnoses, she took an approved medical leave of three weeks.

Upon her return, Williams inquired into short-term disability leave. Roughly a week later, MMO's management began harassing Williams for engaging in activities for which she had obtained permission, such as baking cookies in the work kitchen or taking old food home to her dogs. Eventually, MMO accused Williams of claiming to have worked on July 5, 2015 when she actually had not worked that day. Williams attempted to show MMO that the accusation was false. But MMO terminated Williams's employment. MMO replaced Williams with a much younger person.

After losing her job, Williams applied for unemployment benefits with the Louisiana Workforce Commission (LWC). MMO's director of human resources participated in the LWC proceedings on behalf of MMO. In the proceedings, MMO claimed that the reason it terminated Williams's employment was that she had falsified her timecard and hours worked. Williams testified that the accusation was false. The LWC sided with Williams and awarded her unemployment benefits.

In June 2016, Williams sued MMO for defamation under Louisiana law and for violating the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the Louisiana Age Discrimination in Employment Act (LADEA). The district court dismissed Williams's FMLA and LADEA claims. In August 2019, a jury trial was held on Williams's ADA, ADEA, and defamation claims. The jury found that Williams had not proven that MMO was liable on the ADA

No. 19-30757

and ADEA claims.  But the jury did find MMO liable on Williams's defamation claim.  The jury awarded Williams a total of $224,000.  The jury awarded $112,000 in general damages for past and future "injury to reputation, inconvenience, humiliation, embarrassment, mental anguish, emotional distress, and loss of enjoyment of life."  The jury also awarded $112,000 for "[p]ast loss of income."  The district court entered judgment for Williams in accordance with the jury's verdict.  This appeal followed.

## II

MMO's first argument on appeal is that its published statement to the LWC was protected by qualified privilege and that Williams failed to show that MMO abused that qualified privilege.  Williams contends that MMO waived the defense of qualified privilege by failing to raise it in its answer or motion for summary judgment, and that evidence sufficiently supported the jury's conclusion that MMO abused its qualified privilege.  MMO contends that it did not waive the defense of qualified privilege because Williams's "proposed jury instructions that were filed with the court requested an instruction be given on the defense of qualified privilege."

In reviewing Williams's defamation claim and MMO's defenses, we apply the substantive law of Louisiana but federal procedural rules.[1]  "[T]he analysis for determining whether a conditional privilege exists involves a two-step process."[2]  We must first determine "whether the attending circumstances of a communication occasion a qualified privilege."[3]  Second, we must determine "whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be examined."[4]  Actual malice occurs

---

[1] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938).
[2] *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 682 (La. 2006) (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 639 So. 2d 730, 745 (La. 1994)).
[3] *Id.*
[4] *Id.*

3

No. 19-30757

when "the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not."[5]

Here, we first note that MMO's published statement to the LWC occasioned a qualified privilege because it was made "in the context of an unemployment hearing."[6]  Next, we note that because MMO did not file a timely motion for judgment as a matter of law, MMO waived its sufficiency of the evidence argument regarding whether it abused its qualified privilege.[7] We thus review the jury's conclusion that MMO abused its qualified privilege only to see if it was supported by any evidence.[8]

Before MMO had published the statement to the LWC, Williams had informed MMO that she did not falsify her timecard.  This should have led MMO to examine Williams's timecard.  If MMO had done so, it would have discovered that even though Williams regularly clocked in every day, the timecard facially showed that someone else clocked in Williams on July 5th. This fact indicates that MMO should have known that Williams was not the one falsifying her timecard.  The times for which Williams was clocked in on July 5th were also not her normal working hours, further suggesting that Williams was not the one to clock in on July 5th.  Moreover, Williams did not fill out a missed-clock-punch form, which would have been necessary to allow someone else to clock her in or out, suggesting that Williams was not even involved with this July 5th clocking in and out.  Together, this evidence

---

[5] *Tarpley v. Colfax Chronicle*, 650 So. 2d 738, 740 (La. 1995) (citing *Harte-Hanks Commc'ns, Inc. v. Daniel Connaughton*, 491 U.S. 657 (1989)).

[6] *Cyprien v. Bd. of Sup'rs of Univ. of La. Sys.*, 950 So. 2d 41, 45 (La. App. 4th Cir. 2007) (first citing *Melder v. Sears, Roebuck & Co.*, 731 So. 2d 991 (La. App. 4th Cir. 1999); and then citing *Wright v. Bennett*, 924 So. 2d 178 (La. App. 1st Cir. 2005)).

[7] *Polanco v. City of Austin*, 78 F.3d 968, 973-74 (5th Cir. 1996).

[8] *Id.* at 974 ("When there has been no timely motion, we review only whether the plaintiff has presented *any* evidence in support of [her] claim." (emphasis in original) (citing *Bunch v. Walter*, 673 F.2d 127, 130 n.4 (5th Cir. 1982))).

No. 19-30757

supports the jury's conclusion that MMO was at least reckless in defaming Williams during the LWC proceedings. We will not disturb the jury's conclusion.

## III

MMO's second argument on appeal is that the jury's defamation verdict had no evidentiary support for its award of general or special damages. We note that under Louisiana law, "[a] successful claimant in a defamation action must establish the following elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[9]

First, we turn to the jury's award for general damages. Words that "by their very nature tend to injure one's personal or professional reputation, [even] without considering extrinsic facts or circumstances, are considered defamatory per se."[10] In a defamation per se action, the elements of falsity, fault, and injury may be presumed, though these presumptions can be rebutted by the defendant.[11]

In the present case, because MMO accused Williams of a fraudulent activity in a published statement to the LWC, MMO engaged in defamation per se against Williams.[12] Therefore, the jury was permitted to presume that the statement was false, that it was made with malice, and that it resulted in

---

[9] *Wood v. Del Giorno,* 974 So. 2d 95, 98 (La. App. 4th Cir. 2007) (citing *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997)).

[10] *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 675 (La. 2006) (first citing *Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004); and then citing *Cangelosi v. Schwegmann Bros. Giant Super Mkts.*, 390 So. 2d 196, 198 (La. 1989)); *Williams v. Allen*, 15 So. 3d 1282, 1286 (La. App. 2d Cir. 2009) ("When a plaintiff proves publication of words that are defamatory per se, the elements of falsity, malice and damages are presumed, but may be rebutted by the evidence at trial." (citing *Costello*, 864 So. 2d at 140)).

[11] *See Costello*, 864 So. 2d at 140 (citing *Kosmitis v. Bailey,* 685 So. 2d 1177, 1180 (La. App. 2d Cir. 1996)).

[12] *See Kennedy*, 935 So. 2d at 675.

injury.[13]   MMO argues that Williams did not prove her emotional injuries because "Williams did not provide any factual evidence that she sought any type of medical treatment as a result of the embarrassment and humiliation." But "mental anguish does not require proof that medical or psychiatric care was required."[14]   Thus, Williams adequately proved to the jury her claim for general damages from defamation.

Next, we turn to MMO's argument that Williams "failed to provide any factual evidence that the written submission provided to the [LWC] caused her to lose income," which would preclude her award for special damages.  A defendant is liable for special damages, such as lost income,[15] if "the defamatory statements were a substantial factor in causing the harm."[16] Because MMO failed to file a timely motion for judgment as a matter of law in the district court, we review the jury's verdict on special damages for lost income only to see if it was supported by any evidence.[17]

Here, the jury could have concluded that because MMO defamed Williams to the LWC, MMO would have likely continued to defame her had she used MMO as a job reference.  In fact, Williams believed that MMO could not be used as a job reference.  Her belief, when combined with the logical inference that Williams had to explain why MMO terminated her employment to potential future employers, allowed the jury reasonably to conclude that

---

[13] *See Costello*, 864 So. 2d at 140 (citing *Kosmitis*, 685 So. 2d at 1180).

[14] *Lacombe v. Carter*, 975 So. 2d 687, 690 (La. App. 3d Cir. 2008) (citing *Phillips v. Town of Many*, 538 So. 2d 745, 748 (La. App. 3d Cir. 1989)).

[15] *Vaughn v. AAA Ins. Co.*, 161 So. 3d 749, 753 (La. App. 3d Cir. 2014) ("Special damages, which are those damages that can be established to a reasonable mathematical certainty, include awards for past and future lost earnings." (quoting *Cottle v. Conagra Poultry Co. of Mass.*, 954 So. 2d 255, 257-58 (La. App. 3d Cir. 2007))).

[16] *Costello*, 864 So. 2d at 140 (citing *Kosmitis*, 685 So. 2d at 1181; *see also* RESTATEMENT (SECOND) OF TORTS § 622A (AM. LAW. INST. 1977).

[17] *Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996) (citing *Bunch v. Walter*, 673 F.2d 127, 130 n.4 (5th Cir. 1982)).

MMO's defamation was a substantial factor in Williams having lost wages.[18]

Louisiana courts have implicitly recognized this theory of damages for defamation. In *Melancon v. Hyatt Corp.*, an employer defamed an employee by falsely accusing him of stealing towels and fired him on the basis of that falsehood.[19] The employee had a difficult time finding work because he had to explain the false reason for his termination.[20]  A jury awarded the employee lost wages on his defamation claim against the employer.[21] A Louisiana court of appeals examined and upheld the jury's verdict, although it altered the awarded damages.[22] Thus, in the present case, because the jury's verdict for special damages for past loss of income was supported by the evidence, we will not disturb it.

## IV

MMO's third argument on appeal is that the jury's award of general damages to Williams for "injury to reputation, inconvenience, humiliation, embarrassment, mental anguish, emotional distress, and loss of enjoyment of life" is excessive. "We do not reverse a jury verdict for excessiveness except on 'the strongest of showings.'"[23] The award must be so large that it "shock[s] the judicial conscience,"[24] is "so gross or inordinately large as to be contrary to right reason,"[25] or "clearly exceed[s] that amount that *any* reasonable [person] could feel the claimant is entitled to."[26]

---

[18] *See Costello*, 864 So. 2d at 141 (citing *Kosmitis*, 685 So. 2d at 1181).

[19] 589 So. 2d 1186, 1188 (La. App. 4th Cir. 1991).

[20] *Id.* at 1188-89.

[21] *Id.*

[22] *Id.* at 1188-92.

[23] *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983) (quoting *Martin v. City of New Orleans*, 678 F.2d 1321, 1327 (5th Cir. 1982); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir. 1982); and *Bridges v. Groendyke Transp., Inc.*, 553 F.2d 877, 880 (5th Cir. 1977)).

[24] *Id.* (quoting *Complete Auto Transit, Inc. v. Floyd*, 249 F.2d 396, 399 (5th Cir. 1958)).

[25] *Id.* (quoting *Floyd*, 249 F.2d at 399).

[26] *Id.* (quoting *Bridges*, 553 F.2d at 880) (emphasis in original).

No. 19-30757

MMO contends that "the highest amount the trier of fact could have reasonably awarded for general damages would be $10,000." But recent cases by the Court of Appeals of Louisiana indicate that the award of $112,000 in general damages is within the realm of reason.[27] Therefore, the jury's general damages award is not "so gross or inordinately large as to be contrary to right reason," and we will not reverse the jury's verdict.[28]

\*     \*     \*

For these reasons, the judgment of the district court is AFFIRMED.

---

[27] *See, e.g.*, *Alexander v. La. State Bd. of Private Investigator Exam'rs*, 211 So. 3d 544, 552, 554-55, 568 (La. App. 4th Cir. 2017) (upholding a jury's award for $300,000 in general damages for defamation when a state regulatory board falsely accused the plaintiff of working as a private investigator without the proper license); *Thompson v. Bank One of La., NA*, 134 So. 3d 653, 656, 660, 667 (La. App. 4th Cir. 2014) (upholding an award for $150,000 in general damages for defamation when a church board falsely accused a former pastor of stealing a certificate of deposit); *Sommer v. State, Dep't of Transp. & Dev.*, 758 So. 2d 923, 930-33, 948-49 (La. App. 4th Cir. 2000) (upholding a jury's award for $1,000,000 in general damages for defamation when the plaintiff was falsely accused of fraud and abusing the leave system by her employers).

[28] *See Caldarera*, 705 F.2d at 784 (quoting *Floyd*, 249 F.2d at 399).