George HINSHAW, Plaintiff-Appellee,

v.

Bob DOFFER, Individually and as Chief of Police, Perryton, Texas; Ron Wyrick, Individually and as a Police Officer, Perryton, Texas, Defendants-Appellants.

No. 85–1226.

United States Court of Appeals, Fifth Circuit.

March 28, 1986.

Rehearing Denied April 25, 1986.

Wayne P. Sturdivant, Gibson, Ochsner & Adkins, Amarillo, Tex., Marian M. Holmes, Perryton, Tex., for defendants-appellants.

Betty Wheeler, Hoffman & Wheeler, Amarillo, Tex., for plaintiff-appellee.

Before GOLDBERG, HILL and JONES, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In this civil rights action, defendants-appellants Bob Doffer and Ron Wyrick, the former police chief and a police officer, respectively, of Perryton, Texas, appeal from individual and joint and several judgments entered against them following a jury trial. Finding the judgments against Doffer unsupported by the evidence, the judgments against Wyrick supported by the evidence, and Wyrick's other grounds of error without merit, we reverse the judgments against Doffer and affirm the judgments against Wyrick.

### I.

On appeal, as in the district court, the facts of this case remain hotly disputed. The witnesses' stories do not differ only as to degree because of their understandably varying perceptions; rather, the two sets of stories are diametrically opposed, with one side obviously refusing to tell the truth. Fortunately for us, we do not have to decide the factual disputes; a jury determined the factual issues in its answers to numerous special interrogatories. We limit our review of the facts to determining whether the district court erred in not

granting the defendants' motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial. Before reaching the sufficiency of the evidence issues and the other issues raised by the defendants, an orderly presentation demands a brief sketch of the events precipitating this suit. We will relate more of the facts and testimony when we address the specific issues raised by the defendants.

On the evening of November 7, 1981, the plaintiff, George Hinshaw, and his wife went to the Ochiltree County Sheriff's Office and Jail in Perryton, Texas, to investigate a report that the Perryton police had arrested and roughed up their nineteen-year-old son, Jeff Hinshaw. After a short conversation, George Hinshaw and the officer who arrested his son, Ron Wyrick, somehow ended up on the floor of the jail's lobby. Wyrick arrested Hinshaw for assault on a police officer and for disturbing the peace. After the police released him from jail later that night, Hinshaw went to the hospital where he spent two days recovering from the injuries he suffered during his encounter with Wyrick. He returned to work two weeks later.

Hinshaw instituted suit claiming violations of 42 U.S.C. §§ 1981, 1983, and 1988, and the first, fourth, fifth, and fourteenth amendments to the United States Constitution. In response to special interrogatories, the jury found, in relevant part, that: (1) Wyrick falsely arrested Hinshaw, (2) Wyrick used excessive force in arresting Hinshaw, (3) Bob Doffer, the Perryton Police Chief, violated Hinshaw's constitutional rights because he failed to supervise or train Wyrick, (4) a causal connection existed between the failure to supervise or train and the violation of Hinshaw's rights, (5) the failure to supervise or train amounted to gross negligence or deliberate indifference, (6) evil intent motivated Doffer's and Wyrick's conduct or their conduct involved reckless or callous indifference to Hinshaw's rights, (7) Wyrick was 100% at fault for the damages due to false arrest, which amounted to $10,000, (8) Wyrick was 65% at fault and Doffer was 35% at fault for

the damages due to excessive force, which amounted to $25,000, and (9) each defendant should be assessed $2,000 punitive damages. The district court entered judgment ordering that Hinshaw should recover $12,000 from Wyrick individually, $2,000 from Doffer individually, and $25,000 from Wyrick and Doffer, jointly and severally. This appeal followed.

## II.

The defendants raise five issues on appeal: (A) the evidence does not support the judgment against Doffer for failure to supervise or train Wyrick, (B) the evidence does not support the judgment against Wyrick for false arrest, (C) the evidence does not support the judgment against Wyrick for excessive use of force, (D) the trial court erred in entering a joint and several judgment against Doffer and Wyrick, and (E) the evidence does not support the damages found by the jury.

## A.

The first issue on appeal is whether the evidence supports the judgment against Doffer for failure to supervise or train Wyrick. To rephrase Doffer's challenge to the sufficiency of the evidence in the proper terms, he argues that the district court erred in denying his motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial.

The trial court applies the same standard when considering whether to grant a directed verdict or a judgment notwithstanding the verdict.

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the

motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (footnote omitted). The standard governing directed verdicts and judgments notwithstanding the verdict remains the same on appeal. *Rosenberg v. Trautwein,* 624 F.2d 666, 669 (5th Cir.1980); *Sulmeyer v. Coca Cola Co.,* 515 F.2d 835, 841 (5th Cir.), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976).

We will reverse the trial court's denial of a motion for new trial only when the appellant makes a clear showing of an abuse of discretion. *Grenada Steel Industries v. Alabama Oxygen Co.,* 695 F.2d 883, 890 (5th Cir.1983); *Bunch v. Walter,* 673 F.2d 127, 130 n. 4 (5th Cir.1982). "In order to establish an abuse of discretion the [plaintiffs] must show 'an absolute absence of evidence to support the jury's verdict.' " *Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1391 (5th Cir.) (per curiam) (quoting *Urti v. Transport Commercial Corp.,* 479 F.2d 766, 769 (5th Cir. 1973)), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980). Having determined the standards applicable in reviewing the district court's rulings, we must now determine when a police chief may be held liable under section 1983.

■ Section 1983 does not impose liability on a police chief under a vicarious liability or respondeat superior theory. *Reimer v. Smith,* 663 F.2d 1316, 1323 (5th Cir. 1981). For a police chief to incur section 1983 liability he "must either be personally involved in the acts causing the deprivation of an individual's constitutional rights, or there must be a causal connection between an act of the police chief and the constitutional violation sought to be redressed." *Harvey v. Andrist,* 754 F.2d 569, 572 (5th Cir.1985) (citations omitted); *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir.1983).

Although supervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor, they may be liable when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation.

\* \* \* \* \* \*

[T]he plaintiffs must show a failure to supervise properly that caused the harm. Usually, a failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse. Then knowledge may be imputed to the supervisory official, and he can be found to have caused the later violation by his failure to prevent it. *Bowen v. Watkins,* 669 F.2d 979, 988 (5th Cir.1982) (citations omitted). Thus, the plaintiff must show that: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference. One method of recovering under the failure to supervise or train rationale is to show that the police chief failed to control the officer's known propensity for the improper use of force. *Sims v. Adams,* 537 F.2d 829, 832 (5th Cir.1976); *Chestnut v.*

*City of Quincy*, 513 F.2d 91, 92 (5th Cir. 1975) (by implication).[1]

Since Doffer remained at home on the evening of November 7, 1981, and was therefore not personally involved in the acts causing the deprivation of Hinshaw's constitutional rights, Hinshaw tried to prove that Doffer failed to supervise or train Wyrick. Hinshaw relies on three incidents involving Wyrick as support for the argument that Wyrick's past conduct placed, or should have placed, Doffer on notice that Wyrick had a propensity to use excessive force.

■ The first incident involved Jack Jines, a seventy-five-year-old resident of Perryton. Wyrick stopped Jines for allegedly proceeding the wrong way down a one-way alley. Pranksters had apparently reversed the one-way sign so that Jines, who had properly travelled the alleyway for years, now appeared in violation of the law. When Wyrick attempted to ticket Jines for travelling the wrong way in the alley, Jines argued with Wyrick about the ticket. Wyrick testified that Jines then jumped him and that Jines' actions forced him to take Jines to the ground. In the process Jines' glasses were either damaged or broken. Wyrick arrested Jines for assault on a police officer. The city later dropped the charges because of the confusion about the sign and because of Jines' age, and the city paid for the damage to Jines' glasses "as a public relations gesture." Neither Jines nor any other witness to the incident besides Wyrick testified as to what happened when Wyrick arrested Jines. While Jines did not file a complaint, the police department nevertheless conducted an investigation into the incident. The investigator, the Assistant Chief of Police, determined that he was "unsure" whether a complaint based on the incident would have been well-founded.

In the second and third incidents relied on by Hinshaw, Wyrick shot and killed a dog each time. In the first dog incident a woman called the police and reported that she had seen a large dog killing a smaller dog. Apparently Perryton had a "dog problem" and there had been previous instances of dogs killing other dogs. The police department dispatched Wyrick to the scene. When Wyrick arrived he saw a large dog apparently killing a smaller dog. Wyrick fired one shot to scare the animal away, and, when the dog did not cease the attack, Wyrick shot the dog once. Wyrick then discovered that the dog he had just shot was not killing another dog but rather was killing a short-eared rabbit. Wyrick received a verbal reprimand from the Assistant Chief of Police for shooting the dog before fully ascertaining the circumstances.

In the second dog incident a woman called the animal control warden and reported that a dog had bitten her. The warden had received numerous previous calls about the animal, a large St. Bernard. The warden called the police for assistance, and the police dispatched Wyrick to assist the warden. When Wyrick and the warden attempted to catch the dog, the dog attempted to bite both of them. Wyrick observed the dog foaming at the mouth and called the police station for further instructions. Doffer instructed Wyrick to shoot the dog but to be sure not to shoot it in the head. Wyrick shot the dog three times with his service revolver. A laboratory tested the animal's head for rabies, but the laboratory did not find any signs of rabies. Other than these three incidents, Hinshaw offered no other evidence of any incidents involving Wyrick that would put Doffer on notice that Wyrick had a tendency to use excessive force.

In addition to trying to prove that Doffer inadequately supervised Wyrick, Hinshaw

1. Our case law does not make it clear whether the Constitution requires the police chief to control the officer's known propensity for the improper use of force or whether the duty must come from underlying state law. *Compare Sims,* 537 F.2d at 832, *with Chestnut,* 513 F.2d at

92. However, we need not address this issue because, as we hold *infra,* the evidence does not support the conclusion that Doffer failed to control an officer's known propensity for the improper use of force.

also tried to prove that Wyrick received inadequate training. Hinshaw relies on the fact that Doffer could not recall discussing the use of allowable force in the course of his monthly meetings with his officers and the fact that Doffer did not provide Wyrick with additional training following the Jines and dog incidents. To counter the allegation of inadequate training the defendants produced a substantial amount of evidence concerning the training received by Perryton police officers.

All of the officers initially received 320 hours of training, including instruction on the allowable use of force, at a police training academy. The academy teaches the officers that the best way to handle a belligerent citizen is to remain calm and to simply talk with the citizen. The officers also received systematic continuing education in courses taught by the Texas Department of Public Safety, the Federal Bureau of Investigation, the Amarillo College, and the Frank Philips College in nearby Borger. Doffer also instructed the officers in the city's allowable force policy, contained in the policy manual originally prepared by Doffer in 1958 and continuously updated. The manual provides that the officer should use no more force than necessary to effectuate an arrest. Doffer further instructed his officers that they should treat individuals as they would want police officers to treat them.

The testimony also indicated that no one had ever filed a complaint concerning the Perryton Police Department alleging excessive use of force during the twenty-six years that the city retained Doffer as the police chief. The plaintiffs did not introduce any testimony or evidence concerning inadequate training except the testimony by Doffer and Wyrick as to amount and quality of the training Wyrick received. In addition to the evidence concerning supervision and training, Hinshaw further relies on an alleged admission by Doffer that, in a case where an officer may have acted improperly, he would not look into it "very vigorously" unless the complainant filed a formal complaint.[2]

After considering all the evidence concerning supervision and training, we believe that the district court erred in not granting either Doffer's motion for a directed verdict or his motion for a judgment notwithstanding the verdict. The three incidents involving Wyrick offered by Hinshaw do not sufficiently prove that Doffer failed to supervise or that Doffer knew that Wyrick had a propensity for the improper use of force. In the St. Bernard incident, Wyrick's conduct appears entirely proper. In the other dog incident, Wyrick may have acted hastily; however, the Assistant Chief of Police promptly pointed out his error to him, thus indicating that the police administration did exercise adequate supervision over Wyrick. In the Jines incident, Hinshaw produced no proof to show that Wyrick acted improperly, other than the investigator's conclusion that he was "unsure" whether a complaint based on the incident would have been founded. Since Jines refused to talk to the investigator about the incident, the investigator could not make a determination as to whether the complaint was either well-founded or unfounded and was therefore forced to make the "unsure" determination. The evidence overwhelmingly indicates that Doffer properly supervised Wyrick and that Doffer did not know that Wyrick, if in fact he did, had a propensity to use excessive force.

---

**2.** Hinshaw relies on the "admission" as proof that Doffer's officers did not have to follow the established policies because Doffer would not enforce the policies unless he received a formal complaint. We are not at all certain that Hinshaw's reliance on Doffer's answer is well placed. Hinshaw relies on the following testimony:

> Q [by Hinshaw's attorney] If there was some indication that there is a possibility that your officers had acted improperly or maybe

> a little over zealously or over reacted, if you don't get a formal complaint you are not going to look into it very vigorously?
>
> A [by Doffer] No.

Because of the confused wording of the question, one cannot tell with certainty whether Doffer said he would or would not investigate unless the citizen involved filed a formal complaint. However, we do know that Jines did not file a formal complaint and that an investigation nevertheless occurred.

The evidence also overwhelmingly indicates that Doffer properly trained Wyrick. Hinshaw introduced no evidence to show inadequate or improper training. We believe that reasonable jurors could not arrive at any verdict other than that Doffer properly supervised and trained Wyrick; therefore, the district court erred in not granting Doffer's motions for directed verdict and for judgment notwithstanding the verdict. Since the evidence does not support the jury's finding that Doffer failed to supervise or train Wyrick, and since no other basis for holding Doffer liable exists, we reverse the judgments against Doffer and remand this portion of the case to the district court with instructions to enter judgment for Doffer.

### B.

The next issue is whether the evidence sufficiently supports the jury's finding that Wyrick falsely arrested Hinshaw; again, properly characterized, defendants claim that the district court erred in not directing a verdict, granting a judgment notwithstanding the verdict, or ordering a new trial. The familiar standards set out in the preceding subsection govern our review of the district court's rulings on these motions.

■ To prevail on a section 1983 claim for false arrest the plaintiff must prove that the officer made the arrest without probable cause. *Vela v. White*, 703 F.2d 147 (5th Cir.1983); *Trejo v. Perez*, 693 F.2d 482 (5th Cir.1982). "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1980 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925)).

■ Wyrick arrested Hinshaw for violating one part of the Texas disorderly conduct statute: "A person commits an of-

fense if he intentionally or knowingly ... makes an unreasonable noise in a public place or in or near a private residence that he has no right to occupy...." Tex.Penal Code Ann. § 42.01(a)(5) (Vernon 1974). By finding that Wyrick falsely arrested Hinshaw the jury necessarily found that Wyrick did not have probable cause to arrest Hinshaw for violating the statute.

Our review of the evidence indicates that the jury could properly have found for or against Wyrick on this issue. Wyrick's witnesses testified that Hinshaw spoke in a very loud and belligerent tone; on the other hand, Hinshaw's witnesses testified that he spoke only in a slightly elevated tone. However, we do not sit to review the correctness of the jury's decision. We need only decide whether the evidence was "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Boeing*, 411 F.2d at 374. Since, according to the testimony of Hinshaw's witnesses, Hinshaw spoke only in a slightly elevated tone, the jury could reasonably find that Wyrick lacked probable cause for arresting Hinshaw for violating section 42.01(a)(5). The district court properly denied Wyrick's motions for directed verdict and for judgment notwithstanding the verdict on this issue. The district court's denial of the motion for new trial also stands because there was not an absolute lack of evidence to support the jury's verdict. *Bailey*, 613 F.2d at 1391.

■ Wyrick also argues that probable cause existed as a matter of law. Wyrick cites *Bergstralh v. Lowe*, 504 F.2d 1276 (9th Cir.), *cert. denied*, 420 U.S. 930, 95 S.Ct. 1131, 43 L.Ed.2d 402 (1975), for the proposition that subsequent conviction of the offense for which the arrest occurred conclusively establishes that the officer made the arrest with probable cause, absent a showing of fraud, perjury, or corrupt means. *See also Howell v. Tanner*, 650 F.2d 610, 615 n. 6 (5th Cir.1981), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982). Hinshaw pled guilty to

violating section 42.01(a)(5) and paid the fine; therefore, he stands convicted of the offense for which the arrest occurred. It does not, however, necessarily follow, and *Bergstralh* does not stand for the proposition, that probable cause existed.

In *Bergstralh* a jury had previously found the plaintiff guilty of the offense charged. The finding of guilt meant that the jury found beyond a reasonable doubt that the plaintiff committed the offense; therefore, probable cause to believe the offense occurred certainly existed. The rationale for the holding in *Bergstralh*, however, does not apply to the instant case. No jury found Hinshaw guilty; rather, Hinshaw pled guilty and paid his fine at the time the police released him from jail. Hinshaw's plea, made at 2 a.m., following a severe beating, and with him in need of medical attention, does not establish that he committed the offense charged or that probable cause to believe he committed the offense existed. We do not believe that Hinshaw's guilty plea should be considered conclusive proof that probable cause existed. Since the rationale for the court's holding in *Bergstralh* does not apply to the facts of Hinshaw's case, we refuse to apply *Bergstralh* to the facts before us.

### C.

The third issue on appeal is whether the evidence supports the judgment against Wyrick for excessive use of force. We again apply the *Boeing* standard to the denial of the motions for directed verdict and for judgment notwithstanding the verdict and the abuse of discretion standard to the denial of the motion for new trial.

■ Our circuit uses the following test in determining whether an officer's use of force constitutes a section 1983 action:

> In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's

action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

*Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981) (citations omitted). Thus, to prevail on a section 1983 excessive force claim, a plaintiff must prove three things; (1) severe injury, (2) grossly disproportionate action vis-a-vis the need, and (3) malice.

■ Our review of the record shows that ample evidence supports the jury's finding of excessive force. Hinshaw spent two days in the hospital following his encounter with Wyrick, and, when he did leave the hospital, he left against the advice of his doctor. The medical records show that, at the time of his admission to the hospital, Hinshaw suffered from multiple contusions and lacerations. Hinshaw testified that he incurred considerable physical pain as a result of his injuries and that he still suffers occasional numbness in one arm. Hinshaw easily met the severe injury requirement of *Shillingford*.

Several witnesses testified that, while several men held Hinshaw on the ground, Wyrick repeatedly stomped on Hinshaw's head and then, placing all his weight on one foot, bounced up and down on Hinshaw's head. Even Wyrick's witnesses admitted that they knew of no circumstances requiring such a use of force. Thus, the evidence supports the finding that Wyrick took grossly disproportionate action in comparison with the action needed.

The evidence also shows that malice rather than carelessness or excess zeal inspired Wyrick's conduct. Several witnesses testified that, when Hinshaw asked Wyrick if he had roughed up his son, Wyrick responded: "So what if I did; what are you going to do about it?" When Hinshaw replied, in a nonthreatening tone, "If he's hurt, just pull off your badge and step outside," Wyrick immediately knocked Hin-

shaw to the floor and began stomping on his head.

The evidence amply supports the jury's finding that Hinshaw suffered severe injuries, that Wyrick took grossly disproportionate action in relation to the need for action, and that malice inspired Wyrick's conduct. The district court properly denied Wyrick's motion for directed verdict, for judgment notwithstanding the verdict, and for a new trial on this issue.[3]

### D.

■ Defendants' fourth issue on appeal is whether the district court erred in entering a joint and several judgment against Doffer and Wyrick on the excessive use of force claim. Our holding that the district court should have granted a directed verdict in Doffer's favor moots this issue; however, our holding raises another issue. We must decide whether to hold Wyrick 100% liable for the damages due to the excessive use of force although the jury found Wyrick only 65% at fault for these damages or whether to hold Wyrick liable for only 65% of the damages.

In the typical case where the district court holds two defendants jointly and severally liable for the damages arising out of a single incident and then the appellate court reverses the judgment against one of the defendants, we would simply hold the remaining defendant fully liable for the damages. *See Palmer v. Hall*, 517 F.2d 705 (5th Cir.1975) (by implication). In *Palmer*, the district court held a mayor and a policeman jointly and severally liable for the injuries suffered by the plaintiff when the policeman shot him. We reversed the judgment against the mayor and let the full amount of the judgment fall on the policeman. However, *Palmer* differs from the instant case in that in *Palmer* the district court did not apportion the fault between the two defendants while in the instant case the district court, based on a jury finding, apportioned the fault between the two defendants.

Our review of the federal case law failed to uncover any cases discussing the issue we now confront. Since federal law does not address the issue, we must, pursuant to 42 U.S.C. § 1988, turn to state law for the answer to our question.

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be

---

3. Defendants also halfheartedly argue that section 1983 does not provide a remedy when state law provides an adequate postdeprivation tort remedy such as a civil assault and battery suit. Defendants cite *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Gilmere v. City of Atlanta*, 737 F.2d 894 (11th Cir.1984), for this proposition. Our holding in *Augustine v. Doe*, 740 F.2d 322 (5th Cir.1984), squarely forecloses defendants' argument:

In short, *Parratt* applies only when a plaintiff asserts a violation of his right to procedural due process. *Parratt* is irrelevant if the plaintiff alleges a violation of a substantive right protected by the Constitution against infringement by state governments.

\*　　\*　　\*　　\*　　\*　　\*

*Parratt v. Taylor* is not a magic want that can make any section 1983 action resembling a tort suit disappear into thin air. *Parratt* applies only when the plaintiff alleges a deprivation of procedural due process; it is irrelevant when the plaintiff has alleged a violation of some substantive constitutional proscription. *Id.* at 327, 329. Since Hinshaw's suit involves a substantive constitutional right rather than a procedural right, we find *Parratt* inapplicable, and we further find the defendants' argument on this point without merit.

extended to and govern the said courts in the trial and disposition of the cause....
42 U.S.C. § 1988; *see generally Dobson v. Camden*, 705 F.2d 759, 761–64 (5th Cir. 1983), *rev'd on other grounds*, 725 F.2d 1003 (5th Cir.1984) (en banc).

Since this case comes to us from Texas, we look to Texas law for the answer to whether we should hold Wyrick liable for the full amount of the judgment. Texas law in negligence cases provides, with one exception, that joint tortfeasors are jointly and severally liable to the plaintiff even though the jury assesses them specific percentages of fault.

> Each defendant is jointly and severally liable for the entire amount of the judgment awarded the claimant, except that a defendant whose negligence is less than that of the claimant is liable to the claimant only for that portion of the judgment that represents the percentage of negligence attributable to him.

Tex.Civ.Prac. & Remedies Code Ann. § 33.-013 (Vernon 1986). Texas law in products liability cases provides, with no exceptions, that joint tortfeasors are jointly and severally liable to the plaintiff even though the jury assesses them specific percentages of fault. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 429 (Tex.1984). While Texas law does not address joint and several liability when a court applies percentage causation in a constitutional tort case, we believe the Texas scheme in negligence and products liability cases indicates that joint and several liability should likewise apply in constitutional tort cases.

Texas law further provides that, when an appellate court reverses the judgment against one of two (or more) jointly and severally liable tortfeasors, the other tortfeasor remains fully liable for the judgment. *S.H. Kress & Co. v. Selph*, 250 S.W.2d 883, 896 (Tex.Civ.App.—Beaumont 1952, writ ref'd n.r.e.). While we could not find a Texas case where the appellate court reversed the judgment against one of two jointly and severally liable defendants after a judge or jury apportioned the percentages of causation, we believe a Texas court would link together the two doctrines expressed in section 33.013 and *Selph* and hold the remaining defendant fully liable for the judgment. We adopt this rationale pursuant to section 1988 and hold that Wyrick is fully liable for the judgment against him for excessive use of force.

Section 1988 also requires us to determine whether the remedy provided by the state is consistent with the Constitution. We believe that our holding comports with the goals of section 1983, compensating plaintiffs who suffer a violation of constitutional rights and preventing abuses by those acting under color of state law. *See Robertson v. Wegmann*, 436 U.S. 584, 591, 98 S.Ct. 1991, 1995–96, 56 L.Ed.2d 554, 561 (1978). Were we to hold Wyrick responsible for only 65% of the damages suffered by Hinshaw, then Hinshaw would not receive full compensation for his injuries. We would be punishing Hinshaw because he sued an extra defendant and because the district court erred in not granting Doffer's motions for directed verdict and for judgment notwithstanding the verdict. Since these policy considerations indicate that our application of Texas law to resolve the question of whether to hold Wyrick fully liable for the judgment is "not inconsistent with the Constitution and laws of the United States," we adopt this aspect of Texas law.

### E.

Defendants' fifth and last issue is whether the evidence sufficiently supported the damages found by the jury. The jury found $10,000 damages for the false arrest, $25,000 damages for the use of excessive force, and $2,000 punitive damages against each defendant. When considering challenges to the amount of damages awarded by the jury, we accord considerable deference to the jury's determination.

> As a general rule, a jury's assessment of damages is entitled to considerable deference by this Court. This Court will disturb the jury's finding only in those instances where the award " 'clearly exceeds that amount [to which] any reason-

able man could feel the claimant is entitled.'" *Haley v. Pan American World Airways,* 746 F.2d 311, 317 (5th Cir.1984) (quoting *Bridges v. Groendyke Transport, Inc.,* 553 F.2d 877, 880 (5th Cir. 1977)). The fact that the district court has reviewed and approved the award makes this Court even more hesitant to overturn the award. *Id. See also Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 934 (5th Cir.1982). *Enterprise Refining Co. v. Sector Refining, Inc.,* 781 F.2d 1116, 1117-18 (5th Cir. 1986).

Our law entitles a section 1983 plaintiff to the same compensation as any other tort plaintiff. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Keyes v. Lauga,* 635 F.2d 330, 336 (5th Cir.1981). Thus, a section 1983 plaintiff may recover for pain and suffering, mental anguish, and embarrassment, in addition to medical expenses and lost wages. The evidence reveals that Hinshaw had approximately $2,500 in out-of-pocket expenses for medical bills and lost wages; therefore, the jury awarded him approximately $32,500 for pain and suffering, mental anguish, and embarrassment. The evidence adequately supports this amount of damages. Hinshaw suffered a severe beating and remained sore for several weeks after the beating. He testified that he has experienced occasional numbness in one arm up until the time of trial. He has also become a more fearful person and shows increased signs of nervousness. Hinshaw also suffered embarrassment when Wyrick arrested him in front of his wife, his son, and a friend of the family.

Defendants also challenge the award of punitive damages. Of course, we reverse the award of punitive damages against Doffer as the district court should have granted a directed verdict or entered a judgment notwithstanding the verdict in his favor. Our law permits a punitive damages award in a section 1983 case if evil intent motivates the defendant's conduct or if the defendant's conduct involves reckless or callous indifference to the plaintiff's

rights. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The evidence in the instant case amply supports the proposition that Wyrick exhibited reckless and callous indifference to Hinshaw's rights; therefore, we affirm the punitive damages award against Wyrick.

### III.

For the reasons above set out, we AFFIRM the judgments against Wyrick including the full amount of the damages awarded for excessive use of force, and REVERSE the judgments against Doffer, and REMAND the case to the district court for entry of judgment consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.