**James E. WHITE, Plaintiff,**

**v.**

**Leon TAYLOR, Individually and as Police Officer for the City of Morton, Mississippi, Clell Harrell, Individually, and as Chief of Police, City of Morton, Mississippi, the City of Morton, Mississippi, Defendants.**

**No. J87–0370(B).**

United States District Court, S.D. Mississippi, Jackson Division.

July 5, 1990.

Judgment July 24, 1990.

---

16. Defendant's Post Trial Proposed Findings of Fact and Conclusions of Law, p. 7.

Brad Sessums, Young, Scanlon & Sessums, P.A., Jackson, Miss., for plaintiff.

Gary E. Friedman, W. Thomas Siler, Jr., Phelps Dunbar Marks Claverie & Sims, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the separate Motions of the City of Morton, Mississippi, and its officials in their official capacities, and Chief Clell Harrell, individually, for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Plaintiff has responded to the Motions, and the Court, having considered the Motions, together with memoranda of authorities and attachments thereto, makes these findings of facts and conclusions of law.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

James White brought suit under 42 U.S.C. § 1983, alleging that he was arrested without probable cause and detained incommunicado for eight hours without being informed of the charges against him. Defendants Taylor and Harrell, in their individual capacities moved to dismiss on the basis of qualified immunity. After ordering White to file an amended complaint pursuant to *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985), this Court denied the Motion to Dismiss. The Defendants appealed that ruling as a matter of right, *see Gagne v. City of Galveston*, 805 F.2d 558, 559 n. 1 (5th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), to the Court of Appeals for the Fifth Circuit, which affirmed but noted that the immunity issue was still alive and that "facts unearthed in discovery will influence the court's decision on summary and final judgments."

Discovery has revealed the following undisputed facts. The Defendant Clell Harrell is the elected police chief of the City of Morton, Mississippi. He has served in that capacity since 1981. Harrell hired Defendant Taylor as a full-time law enforcement officer in November of 1985. Taylor had

previous law-enforcement experience with the City of Forest, Mississippi. Taylor was required by Miss.Code Ann. § 45–6–11 to attend a law enforcement training academy and receive a certificate before his first anniversary as employment as a law enforcement officer. In November, 1986, Taylor attended the Academy. After about three weeks of training Taylor was informed by someone at the Academy that he could not complete his training because he lacked a high school diploma or its equivalent. Despite his knowledge that Taylor had not completed his training and become certified, Harrell allowed Taylor to continue on the police force until he could pass the high school equivalency test, known as the General Educational Development test, or G.E.D., complete a law enforcement training academy course and become certified as required by law. Attendance at the Academy is the only training City of Morton law enforcement officers receive.

The only restriction Harrell placed upon Taylor's activities pending his activities was that he had to ride with a "senior officer." Taylor was assigned to ride with Officer Keith Hollingshead. Hollingshead was a part-time officer who, although he had not been to the Academy, was qualified to serve as a law enforcement officer under state law because he had not been employed as a police officer for more than one year.

On the night of May 29, 1987, a time at which Taylor was not certified and lacked the authority to make arrests, he was patrolling in the City of Morton with Hollingshead. When James White drove by in his truck, Taylor and Hollingshead suspected him of driving under the influence and pulled him over. The reasonableness of that suspicion is a disputed fact in the case. It is undisputed, however, that White was stopped, arrested and incarcerated by Taylor. There is a dispute over the extent to which Hollingshead participated in the arrest. White was detained in the Morton City Jail for approximately eight hours on charges of reckless driving and disorderly conduct, misdemeanors under state law. During his eight hour incarceration, Plaintiff was not informed of the charges against him or of his right to counsel and was not allowed to use the telephone to contact his family or his lawyer. After depositing White in jail, Taylor returned to the police station and called Chief Harrell to inform him what had happened. Taylor advised Harrell that White had not been allowed a phone call. Harrell told Taylor to hold White until morning. White was released on an appearance bond at 6:00 o'clock the following morning pursuant to Miss.Code Ann. § 99–3–18 (defining post-arrest procedures for release of misdemeanant on written notice to appear later). White was later acquitted of the charges by the Morton, Mississippi, Municipal Court, which ruled that his arrest was illegal since Taylor had lacked the authority to arrest.

## SUPERVISORY LIABILITY

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the Supreme Court determined that the common law doctrine of respondeat superior may not serve as the basis for imposing section 1983 liability. *Monell* dealt with municipal liability, but in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) the Court held that the rule against respondeat superior liability applies to superior officers, that is, superior officers may not be subjected to section 1983 liability simply because of their authority to control subordinate employees. Rather, a supervisor can only be found liable on the basis of his or her own personal participation in the wrongful conduct, or where there is a causal connection between the supervisor's breach of a duty imposed by state or local law and the constitutional violation sought to be redressed. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986).

The Plaintiff asserts two theories of liability in support of his case against Chief Harrell individually. The first is that Chief Harrell was personally involved in the constitutional deprivation because he instructed Taylor to leave the Plaintiff in jail overnight. In order to overcome Harrell's de-

fense of qualified immunity for his personal involvement, White must establish (1) that the right allegedly violated by his continued detention on Chief Harrell's orders was "clearly established" when Harrell advised Taylor to detain White, and (2) that a reasonable official, acting in Harrell's stead and on the basis of the information available to Harrell, would have known that White's continued detention violated that right. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). While the record indicates that Chief Harrell was in no way personally involved in the initial stop, arrest, or detention of White, the evidence is that Harrell was telephoned at home after the Plaintiff had been incarcerated and that he instructed Taylor to hold the Plaintiff until the following morning. It is true that relatively short delays in releasing a person who is entitled to be released are not necessarily unconstitutional, *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979), ("false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official"); *McConney v. Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989), but it is for the jury to determine whether the eight-hour, overnight detention of the Plaintiff was reasonable. *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988).

 Next, the Plaintiff urges that Harrell should be held liable because he neglected his state-law duty to properly train and supervise Taylor and because he left him in his job knowing that he was not authorized to make arrests. In the context of inadequate training and supervision, supervisors should only be held liable where (1) they failed to supervise or train the officer, (2) a causal connection exists between the failure to supervise or train and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to "gross negligence" or "deliberate indifference." *Hinshaw*, 785 F.2d at 1263; *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir.1982). Recently, the Supreme Court rejected a "gross negligence" standard in favor of a stricter "deliberately indiffer-

ent" standard in the case of a municipality. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). At least three circuit courts of appeals have applied this standard to the case of a supervisor, such as Chief Harrell. *See, e.g., Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989) (plaintiff required to show a specific supervisory practice, procedure, or omission that evidences deliberate indifference); *Jones v. Chicago*, 856 F.2d 985, 992–93 (7th Cir.1988) (plaintiff bears heavy burden to show that supervisors know about unconstitutional conduct and "facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference."); *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir.1989) ("A single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability...."). The fact that Chief Harrell allowed Taylor to remain on the job knowing that he lacked certification at most constitutes a violation of state law. It is well settled that Defendants do not lose their qualified immunity because they are aware that their conduct violates well-established *state law*. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Likewise, there is no constitutional right to be free from arrest by one not authorized to make arrests under state law. *Davis v. City of Terry*, Civ. Action No. J88–0677(B) (S.D.Miss. May 19, 1989). But the Plaintiff does not assert a violation of state law as a basis for section 1983 liability. He asserts rather that neglect by Harrell of his state law duty to properly train and supervise Taylor as to Plaintiff's federal constitutional rights was a direct proximate cause of Plaintiff's injuries. On this subject the Court of Appeals for the Fifth Circuit stated in its affirmance of this Court's denial of the Defendants' Motion to Dismiss:

> Harrell displayed deliberate indifference to White's rights by failing to comply with a duty imposed by state law. Even if Harrell had no duty under state law, the need to train officers to comply with

constitutional safeguards is "so obvious" that Harrell's failure to train Taylor amounts to deliberate indifference. It is of course true that violations of state law are not themselves actionable under Section 1983. Harrell's duties under state law, however, establish his personal responsibility for ensuring that his officer's [sic] met the state's certification requirements. His abdication of those duties presented sufficient evidence from which a jury could find that his deliberate indifference or gross neglect caused White's injury.

*White v. Taylor*, No. 88–4064 at 9–10 (5th Cir. June 15, 1989) [877 F.2d 971 (Table)] (citations omitted). Accordingly, the Motion of Defendant Harrell should be denied with respect to Plaintiff's federal law claim.

## MUNICIPAL LIABILITY

■ Many of the issues and principles in this area apply both to entity liability and supervisory liability. The questions of municipal and supervisory liability, however, are, in the usual case, separate and distinct. Not every ruling that a supervisor is liable for a wrong automatically leads to the conclusion that the entity should also be found liable. This is because the supervisor's conduct may not reflect municipal policy, the existence of which is a prerequisite to municipal liability. In such a case in this circuit in order to hold a municipality liable on a theory of inadequate training or supervision, the plaintiff must prove "at least a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police conduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force." *Rodriguez v. Avita*, 871 F.2d 552, 555 (5th Cir.), *cert. denied*, 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989); *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983).

■ In the instant case, however, the Defendant City of Morton has not disputed the fact that Chief Harrell was the final authority, or policymaker regarding law enforcement personnel for the City.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court held that one act by one municipal policymaker may be a municipal policy that provides the basis for the imposition of municipal liability. The Court noted that "once a municipal policy is established, it requires only one application ... to satisfy *Monell*'s requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy." *Pembaur*, 475 U.S. at 478 n. 6, 106 S.Ct. at 1297 n. 6 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 822, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 (1985)). To establish the existence of a policy, a court should examine whether the decision was made by a "policymaker." The Court stated:

> To be sure, "official policy" often refers to formal rules or understandings ... that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.... However ... a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy ..." More importantly, where action is directed by those who establish government policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

*Id.* 475 U.S. at 481, 106 S.Ct. at 1299.

A policymaker is one who has final authority to make a choice and makes a choice between several alternatives. *Id.* at 484, 106 S.Ct. at 1300–01. Whether an official has final policymaking authority is a question of state law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923–24, 99 L.Ed.2d 107 (1988), and is "to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598, 628 (1989).

Section 21–21–1 of the Mississippi Code states, "the marshal or chief of police shall be the chief law enforcement officer of the municipality and shall have control and supervision of all police officers employed by said municipality." Since it is undisputed that Chief Harrell has policy-making authority in the City of Morton, and since pursuant to his authority he adopted a course of action with respect to the training of his officers under his supervision, including Defendant Taylor, the City of Morton is equally responsible with Chief Harrell for any liability he may incur in regard to his decision to allow Officer Taylor to continue in his responsibilities even though he had not received proper training. Accordingly, the Motion of the City of Morton should be denied.

## STATE LAW CLAIMS

The City of Morton argues that it is immune from suit on any state law violations under traditional sovereign immunity principles. It is well settled under Mississippi law that a municipality is entitled to sovereign immunity unless statutory law expressly grants a plaintiff the right to sue. *Strait v. Pat Harrison Waterway Dist.*, 523 So.2d 36, 38 (Miss.1988). Plaintiff asserts that the City of Morton and its officials acting in their official capacities have waived their sovereign immunity by participating in the Mississippi Municipal Liability Plan ("MMLP"). Such a contention is without merit. In *C–1, A Minor v. City of Horn Lake*, Civ. Action No. DC88–116–D–0 at 22–25, 775 F.Supp. 940, 951–952 (N.D.Miss. June 15, 1990) (Davidson, J.), the United States District Court for the Northern District of Mississippi construed Mississippi law on this subject in accordance with the mandate of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Horn Lake*, the court, relying upon opinions of the lower courts in Mississippi, *see Molden v. City of Moss Point*, No. 89–5118(3) (Circuit Court of Jackson County May 31, 1990); *Webb v. Jackson*, No. 6313 (Circuit Court of Newton County Feb. 9, 1990); *Dean v. Town of Moorehead*, No. 13,666 (Circuit Court of Sunflower County Feb. 1, 1990), upon the reasoning of the court in *Antiporek v. Village of Hillside*, 114 Ill.2d 246, 102 Ill.Dec. 294, 499 N.E.2d 1307 (1986), and upon the plain language of the by-laws of the MMLP, which state that the purpose of the MMLP is "to create a reserve fund for the payment of claims which are not insured and which are not covered by immunity," made the *"Erie* guess" that the Mississippi Supreme Court would conclude that the City of Horn Lake's participation in the MMLP did not constitute a waiver of its sovereign immunity as to plaintiff's state law claims. Judge Davidson's Opinion stated as follows:

*State Law Claims Municipal Liability*

The City of Horn Lake argues that it is immune from any state law violations under traditional sovereign immunity principles. It is well settled under Mississippi law that a municipality is entitled to sovereign immunity unless statutory law expressly grants someone the authority to sue. *Stratt v. Pat Harrison Waterway District*, 523 So.2d 36, 38 (Miss.1988). The grant of authority to sue must be clear and unambiguous. *Id.* Plaintiffs contend that the city waived its sovereign immunity by becoming a member of the Mississippi Municipal Liability Plan (MMLP), a non-profit corporation. Plaintiffs rely on the following statute in support of their argument:

Municipalities are hereby authorized, in the discretion of the governing authorities, to purchase general liability insurance coverage, including errors and omissions insurance for municipal officials and municipal employees.

Nothing contained herein shall be considered as a waiver of immunity in whole or in part as to any governmental function except that where the municipality has liability insurance coverage as to any action brought against it, then such action may be maintained against such municipality, but any recovery in such action shall be limited solely to the proceeds of any such liability insurance coverage and a judgment creditor shall have recourse only

to the proceeds of such liability insurance coverage. Any judgment rendered in excess of the limits of such insurance shall, on motion of the court, be reduced as to the municipality to the amount of said liability insurance coverage but not as to any joint tortfeasor, if any.

Miss.Code Ann. § 21–15–6 (Supp.1989). Plaintiffs argue that the city has waived its immunity to the extent of its coverage under the MMLP. The city's position is that: (1) MMLP membership is not a purchase of general liability insurance under § 21–15–6 and (2) even if the MMLP membership is considered insurance, plaintiffs' claims are not covered by the insurance.

In deciding questions of state law, this court must apply the law as the Mississippi state courts would apply it. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is the court's duty to view itself as an inferior state court and to make a decision that it thinks a state court would reach. *Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 396–97 (5th Cir.1986), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Di Pascal v. New York Life Ins. Co.,* 749 F.2d 255, 260 (5th Cir.1985). In the absence of specific guidance from the Mississippi Supreme Court, a federal district court must look to the following criteria in making an *Erie*-guess: 1) lower state court decisions in Mississippi and Supreme Court dicta; 2) the general rule on the issue; 3) the rule in other states looked to by Mississippi courts when they formulate the substantive law of Mississippi; and 4) other available legal sources, such as treatise and law review commentaries. *Jackson,* 781 F.2d at 397 (citing *Guarantee [Guaranty] Trust Co. v. York,* 326 U.S. 999[99], 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); 19 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 4507; 1 A.J. Moore, *Moore's Federal Practice,* para. 0.309[2] ).

The issue of whether membership in a plan such as MMLP constitutes the purchase of liability insurance has not been addressed by the Mississippi Supreme Court. Plaintiffs submitted decisions from Mississippi circuit courts which specifically hold that membership in the MMLP is not a purchase of general liability insurance under § 21–15–6. *Molden v. City of Moss Point,* No. 89–5118(3) (Circuit Court of Jackson County May 31, 1990); *Webb v. Jackson,* No. 6313 (Circuit Court of Newton County Feb. 9, 1990); *Dean v. Town of Moorehead,* No. 13,666 (Circuit Court of Sunflower County Feb. 1, 1990). Defendant also presented a case decided by the Illinois Supreme Court which held that a municipal's [sic] participation in a risk management pool was not a waiver of the municipal's [sic] sovereign immunity based on a state statute similar to § 21–15–6. *Antiporek v. Village of Hillside,* 114 Ill.2d 246 [102 Ill.Dec. 294], 499 N.E.2d 1307 (1986). The court noted that making contributions to the pool was not like making premium payments to a private insurance company which would enjoy a windfall if the city was entitled to a sovereign immunity defense.

The by-laws of the MMLP state that the purpose of contributing to the fund is "to create a reserve fund for the payment of claims which are not insured and which are not covered by immunity.... It is not intended that any immunity ... is waived by the creation of such reserves...." Given the state [sic] purpose of the city's membership, the express disclaimer of waiver, and the arguments presented by the persuasive authority, the court makes an *Erie* guess that the Mississippi Supreme Court would conclude that the city's membership in the MMLP did not waive its sovereign immunity as to plaintiffs' state law claims. The reserves are not premium payments and were not intended to cover claims such as plaintiffs [sic] claim. Therefore, the court holds that the city is not liable for the alleged state law violations.

This Court agrees with the reasoning and conclusions drawn by Judge Davidson and adopts the reasoning of the court in *Horn*

*Lake* with regard to the immunity of the City of Morton. Accordingly, the state law claims against the City should be dismissed.

With regard to state law claims against the Defendant Harrell, to the extent that they are based upon the common law of torts, they are not subject to dismissal at this time. Any claim attempted to be directly asserted under Miss.Code Ann. § 45–6–11 however should be dismissed, as that statute does not create a private right of action for the recovery of damages.

IT IS THEREFORE ORDERED that the Motions of the Defendants be DENIED IN PART and GRANTED IN PART. They are DENIED with respect to all of the FEDERAL CLAIMS of the Plaintiff and his COMMON LAW CLAIMS against Defendant Harrell. The Motions are GRANTED with respect to ALL STATE LAW CLAIMS against the City of Morton and STATE STATUTORY CLAIMS against Defendant Harrell.

SO ORDERED.

### JUDGMENT

This civil action came on for trial before the Court and a jury, Honorable William H. Barbour, Jr., United States District Judge, presiding, and the issues having been duly tried and the jury having responded to special interrogatories, and having duly rendered its verdict,

IT IS ORDERED AND ADJUDGED:

1. That the James E. White recover of the Defendant Johnny Clell Harrell, the sum of $1.00 nominal damages and $25,000.00 punitive damages, with interest thereon at the rate provided by law, his attorneys fees in an amount to be later determined by the Court and all costs of this action;

2. That the Plaintiff James E. White take nothing against the Defendant Leon Taylor, and that the civil action against Leon Taylor be, and the same is hereby, dismissed with prejudice;

3. That the Plaintiff take nothing against the Defendant The City of Morton, Mississippi, and that the civil action against

The City of Morton, Mississippi, be, and the same is hereby, dismissed with prejudice.