**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-31168
Summary Calendar

EDWIN BEDFORD; ET AL.,

Plaintiffs,

EDWIN BEDFORD,

Plaintiff-Appellant,

versus

THE CITY OF MANDEVILLE, through its Police
Department; THOMAS BUELL, Police Chief;
RICHARD JONES; COREGIS INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-1888-S)

October 22, 1999

Before KING, Chief Judge, HIGGINBOTHAM, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff Edwin Bedford ("Bedford") appeals from the district court's amended judgment. The

district court entered an amended judgment in favor of defendants, City of Mandeville ("City") and

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Thomas Buell ("Buell") ordering Bedford to pay $20, 911 in attorney's fees.[1]  For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of May 27, 1995 Bedford and his two sons were riding bicycles on Lakeshore Drive in Mandeville.  Bedford's sons were stopped by Officer Richard Jones ("Jones") who was providing security detail for a wedding reception.  A confrontation ensued between Bedford and Jones.  Bedford stated that he approached Jones and gently tapped him on the shoulder and asked him to calm down.  Jones maintained that Bedford poked him in the chest and was verbally abusive.

Several days after this incident Jones completed a narrative report in which he described the incident.  On June 2, 1995 Jones appeared in front of the Justice of the Peace and obtained two arrest warrants for Bedford, for simple assault and battery on a police officer.  Police Chief Buell was not directly involved in the preparation of Jones' report or obtaining the arrest warrants, however, Bedford maintained that Buell had improper and illegal motives in instructing Jones to obtain arrest warrants for Bedford.[2] The arrest warrants were executed by the St. Tammany Sheriff's Department and Mandeville police officers, not including Jones or Buell. The officers knocked on the front door

---

[1] Appellant Bedford's brief presents two other issues for review that invite this court to review appellant's case beyond the award of attorney fees: (1) whether the arrest warrant that was issued was in violation of Bedford's rights, (2) whether the trial court erred in excluding evidence of the prior incident between Bedford and the Mandeville police.  We decline to review these issues because the appellant's notice of appeal only states that Bedford appeals the portion of the amended judgment that dismissed Bedford's complaint at his cost, and awarded attorneys' fees.

[2] Bedford has consistently maintained that his confrontation with Officer Jones and his subsequent arrest and prosecution were the product of a scheme by the Mandeville Police Department to retaliate against him because Bedford had been involved in an altercation with James Turner, another Mandeville police officer, ten weeks prior to the incident which is the subject of this litigation. Bedford filed a separate civil rights action regarding that incident.  Bedford prevailed in that action and was awarded $82,500 on September 18, 1997.

several times and announced themselves as police officers. When there was no response the officers announced themselves again, Bedford refused to open the door, and the officers kicked open the door and arrested Bedford. Bedford was prosecuted on two charges of simple assault and battery on a police officer, however, the charges were dismissed February 8, 1996.

On June 3, 1996 Bedford and Deborah Caldwell[3] ("Caldwell") filed this action against the City of Mandeville, Police Chief Buell, and Officer Jones.[4] Bedford and Caldwell filed suit under 42 U.S.C. §§ 1983, 1985(3), 1986, and Louisiana state law alleging false arrest, false imprisonment, assault, battery, malicious prosecution, intentional infliction of emotional distress, defamation, unlawful entry into their home, and retaliation for Bedford's previous filing of a civil rights complaint. On July 22, 1998 the district court entered summary judgment in favor of the City and Buell dismissing all of Bedford and Caldwell's federal claims and some of their state claims. The trial took place on July 20, 1998. At the conclusion of the plaintiffs' evidence the district court entered judgment as a matter of law pursuant to Fed. R. Civ. P. 50 in favor of Buell and the City dismissing the remaining state law claims against Buell. The only claims submitted to the jury were Bedford's federal claims against Jones, and state law claims for false arrest, malicious prosecution and intentional infliction of emotional distress against Jones and the City. The jury returned a verdict in favor of the defendants on all claims. Defendants Buell and the City sought $54,954.30 in attorneys' fees. Defendants Jones and Coregis sought $25,290 in attorneys' fees. On September 11, 1998 the

---

[3] Caldwell is Bedford's girlfriend and a resident of the home where the arrest warrant was executed. Caldwell filed no notice of appeal from the district court's judgment against her awarding Buell and the City $1,500 in attorney's fees.

[4] Later the plaintiffs amended their complaint to include the Mandeville Police Department's insurer, Coregis Insurance Company ("Coregis").

district court entered an amended judgment dismissing all plaintiff' claims against all defendants with prejudice, plaintiffs to bear all costs, and awarding Buell and the City $20,911 in attorneys' fees. The district court denied Jones and Coregis's request for attorneys' fees. The district court based the award of attorneys fees only on the work done by the attorneys for Buell and the City to defend against Bedford's federal claims and state law claims that were dismissed on summary judgment June 25, 1998. Bedford filed a notice of appeal October 9, 1998 appealing the dismissal of his claims at his cost and the award of attorneys fees to Buell and the City.

## STANDARD OF REVIEW

This court reviews awards of attorney fees for abuse of discretion, and the underlying facts by the clearly erroneous standard. United States v. State of Mississippi, 921 F.2d 604, 609 (5th Cir. 1991); see also Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990).

## DISCUSSION

Attorneys Fees

Bedford argues that the district court abused its discretion in awarding Buell and the City attorneys' fees. Specifically, Bedford contends that the district court misapplied the standard for awarding attorneys fees and argues that he did come forth with some credible evidence that Buell and the City violated his civil rights. For the following reasons we affirm the district court decision and conclude that the district court did not abuse its discretion in awarding attorneys' fees to Buell and the City.

4

The first step in determining whether attorney fees should be awarded in a civil rights action is to determine whether the party seeking the fees is the plaintiff or defendant. United States v. Mississippi, 921 F.2d at 609. A prevailing defendant can recover attorney fees if the plaintiff's action was unreasonable, frivolous, meritless, or vexatious. EEOC v. Kimbrough Investment Company, 703 F.2d 98, 103 (5th Cir. 1983); see also Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed. 2d 648 (1978). The district court should focus on whether the case is so lacking in merit as to be groundless, rather than whether the claim is ultimately successful. Jones v. Texas Tech University, 656 F.2d 1137, 1145 (5th Cir. Unit A 1981). If the plaintiff presents some credible evidence to prove his claim the prevailing defendant is not entitled to attorney fees. Vaughner v. Pulito, 804 F.2d 873, 878 (5th Cir. 1986). The factors important to determining frivolity are: (1) whether the plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or had a trial. United States v. Mississippi, 921 F.2d at 609.

Considering these factors the district court awarded the City and Buell only a portion of the attorneys' fees they requested. This amount represented only the attorneys' work defending Bedford's federal claims and the similar state claims which were dismissed on summary judgment. Therefore, in evaluating the district court's award of attorneys' fees for abuse of discretion we will examine Bedford's claims that were dismissed on summary judgment to determine if the claims were groundless, frivolous or meritless, and thus appropriate for the award of attorneys' fees.[5]

---

[5] The discussion that follows focuses only on Bedford's federal claims against the City and Buell. Buell and the City also sought attorneys fees for all aspects of the case, including their state law claims. Although § 1988 only allows recovery for federal civil rights claims the district court found that the state claims which were dismissed on summary judgment were based on a common core of facts and related legal theories. The district court determined based on the similarity of the

A. Bedford's Claims against the City

Pursuant to 42 U.S.C. § 1983 Bedford claimed that the City violated his civil rights by subjecting him to false arrest, false imprisonment, malicious prosecution, unlawful entry into his home and retaliation. The district court found that Bedford knew or should have known from the outset of the litigation that these federal constitutional claims and their identical state constitutional claims had no evidentiary or legal basis.

Under 42 U.S.C. § 1983 a municipality cannot be held vicariously liable for the constitutional torts of its employees. See Monell v. New York City Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978); see also Gros v. Grand Prairie, 181 F.3d 613, 615 (5th Cir. 1999). Municipal liability arises only when the execution of a local government's policy or custom causes the constitutional injury. See Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996). Isolated incidents are not sufficient to show the existence of a municipal custom or policy. See Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992).

Bedford's claims against the city were based on the alleged actions of Officer Jones in obtaining the arrest warrants, the execution of the arrest warrants by the Mandeville police, and the prior incident between Bedford and Mandeville police officer James Turner that occurred ten weeks prior to the incident that is the focus of the present action. The district court found that Bedford produced no admissible evidence that the City had any unconstitutional policies or customs that caused a violation of the Bedford's constitutional rights. In his appeal to this court Bedford's only argument regarding municipal custom or policy is that the Justice of the Peace did not require Officer

federal and state claims that the time spent by the attorneys on each set of claims could not be segregated. Therefore the district court allowed for recovery of attorneys' fees for work on the state law claims that were similar to the federal law claims.

6

Jones to take an oath when he applied for the arrest warrant. Bedford argues that thi s failure to require an oath is a violation of the Fourth Amendment of the United States Constitution. Even if we assume arguendo that failure to require an oath in application for an arrest warrant is a violation of the Fourth Amendment, Bedford presents no evidence that the Justice of the Peace's actions were controlled or dictated by any municipal policy or custom. Therefore, we conclude that the district court properly found that Bedford's civil rights claims against the City were frivolous.

### B. Bedford's Claims against Buell in his Official Capacity

Suits against a public official in their official capacity generally represent only another way of pleading against the government entity for which the official is an agent. Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed. 2d 114 (1985). Therefore, suits against a public official in their official capacity should be treated as a suit against the government entity itself. See Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L.Ed. 2d 301 (1991). In an official capacity suit against a public official the government entity's policy or custom must have played a role in the constitutional violation. Kentucky, 473 U.S. at 166. As discussed above Bedford presented no credible evidence that the alleged constitutional violations were based on the City's policies or customs. Therefore, we conclude that the district court properly found that the federal law and identical state law claims against Buell in his official capacity were frivolous and without merit.

### C. Bedford's Claims against Buell in his Individual Capacity

42 U.S.C. § 1983 does not impose individual liability on a police chief under vicarious liability or respondent superior doctrine. Hinshaw v. Doffer, 785 F.2d 1260 , 1263 (5th Cir. 1986); see also Baker, 75 F.3d at 199. For a police chief to be liable under section 1983 he must be either personally

involved in the constitutional violation or there must be a causal connection between the police chief's action and the constitutional violation. Hinshaw, 785 F.2d at 1263.

Bedford alleged that Police Chief Buell was directly involved in the alleged constitutional violations by directing Jones to obtain the arrest warrants against him, and "orchestrating" the execution of the warrants at Bedford's home. The district court found that Bedford produced no admissible evidence that Buell was personally involved in the acts causing the alleged deprivations or that any causal connection existed between Buell's actions and any alleged constitutional violations. In his appeal to this court Bedford presents no evidence which contradicts the district court's finding or independently demonstrates Buell's involvement in the alleged constitutional violations. Thus, we conclude that the district court's finding that the claims against Buell in his individual capacity were frivolous is not clearly erroneous.

CONCLUSION

The district court properly found that Bedford's federal and related state law claims against the City and Buell in his official and individual capacity were frivolous and without merit. Therefore, we affirm the district court's award of $20,911 in attorneys' fees to the City and Buell.